**24-CV-7042**

---

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

**IN RE: PURDUE PHARMA L.P., *et al.*
BANKRUPTCY APPEAL:**

STATE OF MARYLAND,
*Appellant,*

*v.*

In re PURDUE PHARMA L.P., *et al.,*
*Appellees.*

---

Appeal from final order of the United States Bankruptcy Court for the
Southern District of New York (*Hon. Sean H. Lane*, *United States Bankruptcy Judge*)

---

**BRIEF OF APPELLANT, THE STATE OF MARYLAND**

---

ANTHONY G. BROWN
Attorney General of Maryland

BRIAN T. EDMUNDS (*pro hac vice*)
Senior Assistant Attorney General

Office of the Attorney General
200 Saint Paul Place
Baltimore, Maryland 21202
Tel.: (410) 576-6300
Fax: (410) 576-6656
bedmunds@oag.state.md.us

October 28, 2024                    *Attorneys for the State of Maryland*

## TABLE OF CONTENTS

STATEMENT OF JURISDICTION ........................................................................ 1

STATEMENT OF ISSUES ................................................................................... 2

STATEMENT OF THE CASE............................................................................... 3

STATEMENT OF FACTS & COURSE OF PROCEEDINGS IN THE BANKRUPTCY COURT5

SUMMARY OF THE ARGUMENT ..................................................................... 8

STANDARD OF REVIEW ........................................................**Error! Bookmark not defined.**

ARGUMENT ....................................................................................................... 9

    I.    Harrington Removes Any Basis For The Preliminary Injunction................................... 9

    II.    The Facts Do Not Warrant A Preliminary Injunction ................................... 14

      A.    Likelihood Of Success On The Merits........................................................... 15

      B.    Irreparable Harm tTo Purdue. ...................................................................... 16

      C.    The Irreparable Harm to the State And The Public....................................... 16

    III.    This Court's Decision In *Dunaway* Provides Zero Support For Continuing The Preliminary Injunction ..................................................................... 14

CONCLUSION.................................................................................................... 18

i

# TABLE OF AUTHORITIES

**Cases**

*Barnes v. Tarrytown Urb. Renewal Agency,* 338 F. Supp. 257 (S.D.N.Y. 1971) .......................... 14

*Bartenwerfer v. Buckley*, 598 U.S. 69 (2023). ............................................................. 15

*De Beers Consol. Mines v. U.S.*, 325 US. 212 (1945)..................................................... 4

*Devose v. Herrington*, 42 F.3d 470 (8th Cir. 1994)....................................................... 20

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999). ...... 13, 18

*Harrington v. Purdue Pharma L.P*, 603 U.S. ---, 144 S.Ct. 2071 (2024)............................. passim

*In re Lynch*, 795 Fed. Appx. 57, 59 (2d Cir. 2020) ....................................................... 11

*In re Purdue Pharma L.P.*, 69 F.4th 45 (2nd Cir. 2023)................................................. 6

*In re Purdue Pharma, L.P.*, 635 B.R. 26 (S.D.N.Y. 2021) .......................................... 1, 5

*In re Purdue Pharmaceuticals, L.P.*, 619 B.R. 38 (S.D.N.Y. 2020)...................................... passim

*In re Queen Elizabeth Realty Corp.*, 586 B.R. 95, 103 (S.D.N.Y. 2018)..................................11

*In re Sanshoe Worldwide Corp.*, 993 F.2d 300 (2d Cir. 1993)..........................................11

*Kosha, LLC v. Alford*, No. 4:19-CV-172 (CDL), 2019 WL 6050725 (M.D. Ga. Nov. 7, 2019)... 14

*Penn Terra Ltd. Dept of Environmental Resources, Com. of Pa.*, 733 F.2d 267 (3d Cir. 1984)... 17

*Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631 (9th Cir. 2015) ........................... 19

*S.E.C. v. Byers*, 609 F.3d 87, 91 (2d Cir. 2010) ............................................................11

*See In re Roman Catholic Diocese of Rockville Centre, NY*, 651 B.R. 622 (S.D.N.Y. 2023) ...... 20

*Tang Capital Partners, LP v. Cell Therapeutics, Inc.*, 591 F. Supp. 2d 666 (S.D.N.Y. 2008)...... 18

*Weston v. Bayne, No. 9:22-CV-621 (LEK/ATB), 2023 WL 8183219 (N.D.N.Y. Nov. 27, 2023)....* 13

**Statutes**

11 U.S.C. § 1123 ................................................................................................ 12

11 U.S.C. §105 ........................................................................................ 3, 12, 13, 14

11 U.S.C. §1123(b)(6) ........................................................................................ 12

11 U.S.C. §1141 ................................................................................................ 12

11 U.S.C. §524 ................................................................................................ 12

27 U.S.C. § 157 .................................................................................................. 1

28 U.S.C. 1334 ............................................................................................... 1, 2

28 U.S.C. §157 ............................................................................................... 1, 2

28 U.S.C. §158 .................................................................................................. 2

## STATEMENT OF JURISDICTION

This is an appeal from the bankruptcy court's extensions on September 6, 2024 (*see* Thirty-Seventh Amended Order Granting Preliminary Injunction, D/N [533] (**A0817**) ("37th Extension Order")  and Thirty-Eighth Amended Order Granting Preliminary Injunction, D/N [557] (**A1199**) ("38th Extension Order")) of the preliminary injunction that this Court previously affirmed over the appeal of several Tennessee district attorneys at an earlier stage of the these proceedings under Chapter 11.  *In re Purdue Pharmaceuticals, L.P.*, 619 B.R. 38 (S.D.N.Y. 2020) ("*Dunaway*").  The State of Maryland timely filed a notice of appeal of the 37th Order on September 12, 2024, and amended the notice of appeal following the 38th Extension Order.

The bankruptcy court purported to exercise "aris[ing] in" and "relate[d] to" jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(b) over the injunction.  This appeal, however, challenges the preliminary injunction only insofar as it enjoins the litigation of claims against the "Related Parties," including members of the Sackler family and their trusts and affiliates.  As this Court previously held, claims against the related parties do not "arise in" bankruptcy and are not core proceedings.  *Dunaway*, 619 B.R. at 48.  The bankruptcy court therefore could render only proposed findings of fact and conclusions of law concerning the Related Party-aspects of the preliminary injunction under 27 U.S.C. § 157(c)(1).  *Dunaway*, 619 B.R. at 55; *see also In re Purdue Pharma, L.P.*, 635 B.R. 26 (S.D.N.Y. 2021) ("*Purdue*"), *rev'd in part on other grounds*, *In re Purdue Pharma L.P.*, 69 F.4th 45, (2d Cir. 2023) (affirming jurisdictional ruling), *rev'd sub nom*, *Harrington v. Purdue Pharma, L.P.*, 144 S. Ct. 2701 (2024),

As this Court has recognized, as a practical matter this jurisdictional analysis affects only the standard of review.  *Dunaway*, 619 B.R. at 55-56; *Purdue*, 635 B.R. at 82.  This Court exercises

jurisdiction under 28 U.S.C. §§ 1334(b), 157(c)(1), and 158(a).  Its review of all questions is *de novo*.  *Dunaway*, 619 B.R. at 55; *Purdue*, 635 B.R. at 82.

Appellant asserted below that the Supreme Court's holding in *Harrington v. Purdue Pharma, L.P.,* 144 S.Ct. 2017 (2024), may require reconsideration of this Court's "related to" subject-matter jurisdiction over claims against members of the Sackler family and the related parties.  In previously assessing its subject-matter jurisdiction in *Dunaway* and *Purdue*, this Court held that it was constrained by the breadth by which the Second Circuit has articulated the "conceivable effects" test in cases like *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 341-42 (2d Cir. 2018).  Although the Supreme Court did not mention this Court's or the Second Circuit's jurisdictional holdings in the confirmation appeal, its reasoning nevertheless erodes the analysis under *SPV* that indemnification and factual overlap conceivably affect the estate.  *See* 144 S.Ct. at 2084 & n.3, 2087 n.7.  The jurisdictional analysis, however, would be largely repetitive of arguments raised on "authority issues" below.

## STATEMENT OF ISSUES

1. Does the Court retain authority to further extend the preliminary injunction, as it relates to non-debtors, after the Supreme Court's holding in *Harrington v. Purdue Pharma L.P*, 144 S.Ct. 2071 (2024), that the Bankruptcy Code does not authorize non-consensual non-debtor releases?

2. If the answer to Issue No. 1 is "yes," do the facts and circumstances demonstrated in the record warrant further extending the preliminary injunction against the pursuit of state civil and administrative law enforcement against the Debtors' Related Parties?

## STATEMENT OF THE CASE

For more than five years, the State of Maryland, like other states and other government units, has been preliminarily enjoined—or "voluntarily bound" under judicial threat of preliminary injunction—from investigating violations of and enforcing state laws that vindicate the public health and safety against Purdue, members of the Sacker Family, other "related parties" since October 12, 2019.  Since October 12, 2019, Purdue Pharma and its affiliates, a group of entities worth approximately $2 billion together—more than enough to reorganize successfully—has failed in this task for the simple reason that it has not come forward with a plan of reorganization that does not shield its owners and their affiliates, who are not debtors in bankruptcy from *their* liability for the opioid crisis.  *See Harrington v. Purdue Pharma, L.P*, 144 S.Ct. 2071, 2081 ("The Sacklers have not filed for bankruptcy and have not placed virtually all their assets on the table for distribution to creditors, yet they seek what essentially amounts to a discharge.").  Thus seeking to reorganize under a plan that cannot be confirmed without the consent of *all* of Purdue's creditors—and foregoing all options of pursuing a plan that the bankruptcy court otherwise could lawfully impose—Purdue has protected the Sacklers, arresting for more than five years, amid a public health crisis that resulted from its and their illegal conduct, the critical process of state and federal civil and administrative law enforcement established under the Constitution to promote the health, safety, and welfare of all Americans.  *See, e.g.,* U.S. CONST. AMEND. X.

As tens of thousands continue to be killed annually by prescription painkillers and their illicit counterparts, the process of hijacking state law enforcement in bankruptcy should not and cannot continue.  The Supreme Court in *Harrington* was plain in holding that the Bankruptcy Code provides the protections of a shelter from claims "to debtors"—those who tender their assets to creditors and submit to bankruptcy's "simple bargain." *See Harrington*, 144 S. Ct. at 2077-78

("[B]eneath [bankruptcy law's] complexity lies a simple bargain:  A debtor can win a discharge of its debts if it proceeds with honesty and places virtually all its assets on the table for its creditors."). It does not afford its protections to non-debtors.  Though *Harrington* arrived at the Court in the posture of a grant of final injunctive relief, the Court's rationale and holding apply with just as much force to preliminary injunctive relief.  Only Debtors, for example, are protected by the automatic stay; and while some courts have ruled that 11 U.S.C. § 105(a) permits to protect debtors an expansion of the automatic stay beyond what Congress set out precisely, *Harrington*'s reasoning and holding foreclose the possibility of providing the same relief to non-debtors like the Sacklers. The Supreme Court squarely rejected arguments that Purdue and the bankruptcy court have repeatedly asserted to justify permanent relief to the Sacklers, and it makes no sense to justify the lesser form of relief—preliminary relief—on these same grounds of which the Court has said the Bankruptcy Code takes no account.  *Harrington*, 144 S. Ct. at 2082 & n.3, 2087 n.7.

Moreover, putting *Harrington's* specific rulings aside, under basic principles of equity jurisprudence there is likewise no basis for continuing to grant preliminary injunctive relief that restrains conduct for which permanent injunctive relief is not available.  There is no cause of action for a standalone "preliminary injunction" that does not correlate to a legally cognizable permanent injunction.  *See De Beers Consol. Mines v. U.S.*, 325 US. 212, 220 (1945) (holding that a preliminary injunction was inappropriate when it did not "grant intermediate relief *of the same character* as that which may be granted finally.").

And, finally, even if there somehow were a special grant of a standalone cause of action for preliminary injunctive relief in the text of the Bankruptcy Code, the grant of a preliminary injunction would not be warranted here.  To support the massive imposition against sovereign state governments and their police powers, Purdue offers little more than the trivial and speculative

irreparable harm that if it or others are distracted from the mediation, it might not get the plan of

reorganization protecting the Sacklers that it has been subjected to bankruptcy to pursue.  Finally,

the powers enjoined here are constitutional powers of state governments that are consistent with

the bankruptcy code.  The public interest—which is the State's interest—weighs heavily against

any grant of preliminary injunctive relief.

### STATEMENT OF FACTS &
### COURSE OF PROCEEDINGS BELOW

This Court is already familiar with the facts underlying this case.  *Dunaway*, 619 B.R. at

42-47; *Purdue*, 635 B.R. at 39-66.  Appellees (Debtors below) filed petitions in the bankruptcy

court seeking reorganization under Chapter 11 on September 15, 2019.  In their first-day motions,

Appellees moved for a preliminary injunction that protected their beneficial owners, members of

the Sackler family, who owned or had served as officers and directors of Appellees, from then-

pending investigations and litigation related to the role of Purdue and these Related Parties in

Purdue's scheme to deceive the public into taking, in ever increasing amounts, prescription

opioids, including the blockbuster drug OxyContin and several other drugs manufactured by

Purdue.  These included investigations or litigation commenced by most states, like *Consumer*

*Protection Div. v. Richard S. Sackler et al.,* No. 19-023-311366 (Md. Consumer Prot. Div. filed

May 16, 2019), an enforcement action under the Maryland Consumer Protection Act against seven

members of the Sackler family (**A1619**), and actions filed by the political subdivisions of most

states, such as *Mayor & Council of the City of Baltimore v. Purdue Pharma, L.P.,* No. 24-C-18-

515 (Md. Cir. Ct. Balt. City) (**A1507**).

Maryland, along with several other states, objected to Purdue's original motion for a

preliminary injunction.  At a hearing before the bankruptcy court, the Honorable Robert D. Drain

(now retired), announced his intention to enjoin the states but permitted them to voluntarily commit

to following the terms of the proposed preliminary injunction in lieu of being enjoined.  **A0065-0333**.  The bankruptcy court's powers would best serve the interest of the parties, including the states, in bringing about a resolution to the controversy between the public and Purdue and the Sacklers. Offering the use of the bankruptcy court's procedures to achieve what the bankruptcy court described as the states' ends, the objecting states consented to be bound by the injunction and began in good faith to pursue relief within the bankruptcy.

Indeed, the State of Maryland, like other states, continued to participate in the bankruptcy under the preliminary injunction until Supreme Court's June 27, 2024 reversal of the bankruptcy court's September 17, 2021 confirmation order, even as the bankruptcy produced results that Judge Drain himself expressed were disappointing and under expectations.  Upon confirmation of those disappointing results, like others, Maryland pursued a successful appeal in this Court resulting promptly in a new settlement, for an additional $1.175 to 1.675 billion, contingent on the Second Circuit and Supreme Court upholding non-debtor releases, which, under the circumstances *then*, the public interest warranted.  *See In re Purdue Pharma L.P.*, 69 F.4th 45, 68 (2nd Cir. 2023) (describing the settlement).  After the Second Circuit reinstated the Purdue's plan in 2023, *see id.*, the Supreme Court, largely agreeing with this Court's earlier holding, reversed the plan and held that nonconsensual nondebtor releases are not authorized by the Bankruptcy Code.  *Harrington,* 144 S. Ct. at 2088.  Specifically, the Court found that bankruptcy code "generally reserve[s] the benefits of discharge to the debtor who offer[s] a fair and full tender of its property." *Id.* at 2086 (cleaned up).  And the Court held that the reasons that Purdue and other plan proponents put forward rather than justify the releases as protecting the Sacklers—the existence factual overlap and indemnification obligations—did not overcome "elemental distinctions" between debtors and non-debtors that the Bankruptcy Code preserves.

Back in the bankruptcy court, after the Supreme Court's ruling, Purdue once again sought what it suggested was a limited extension of the preliminary injunction. Since the bankruptcy court had shortened time for the injunction and Purdue claimed no further extensions were anticipated, the State of Maryland did not oppose the request; instead, it filed a motion to dismiss the adversary complaint that remained pending. **A0402**. With little opposition, the bankruptcy court granted the 60-day extension. **A0456** (Thirty-Sixth Amended Order). In so ruling, the bankruptcy court held that "[t]he Debtors ha[d] demonstrated that the continuation of the active litigation against them and the Related Parties . . . would result in irreparable harm to the Debtors and their reorganization," and that therefore the court "finds it appropriate to extend the preliminary injunction." **A0420** at 11-12.

As the expiration of that extension on September 9, 2024 drew near, the Debtors filed another motion requesting another extension of the preliminary injunction, **A0757-A0781** [ECF 512, 513] for an additional eighteen days – with many of the same reasons they have been asserting for years. Debtors claimed that the "bases for the preliminary injunction are well established" and reiterated that "the reorganization remains viable and the Debtors are substantially more likely to reorganize with the injunction in place." **A0779**. They further argued that "both the present circumstances and the history of the Chapter 11 cases provide[d] strong evidence of the Debtors' prospects for success." **A0779**.

Maryland and other parties objected. **A0782** [ECF 522]. Over these objections, however, echoing its earlier reasoning, the Court again extended the preliminary injunction, issuing its 37th Amended Order. **A0817** [ECF 533]. Maryland timely appealed on September 12, 2024. **A1119**.

Before long, debtors requested another extension. **A1124-1148**. Again, Maryland and others objected. **A1149**. Again, the bankruptcy court held that it was granting the motion "for

7

much of the same reasons." Continuing, the court stated that, although Purdue had not presented any evidence concerning the mediation, "the history of these cases provides strong evidence of the Debtors' prospects for success coming out of mediation." **A1195** 82:12-15. Maryland amended its notice of appeal to encompass the Thirty-Eighth Amended Order.

After indicating that personal and professional constraints rendered them unable to litigate this appeal on the timeframe originally set by the Court, Debtors again filed for an extension in the bankruptcy court. The latest motion—seeking another 35 days, through and including December 6, 2024—will be argued after this brief is filed on October 28, 2024. Although Maryland will continue to vigorously oppose these extensions, this brief assumes that the further extension— bringing the running total to 162 days will be granted by the bankruptcy court.

<u>**SUMMARY OF THE ARGUMENT**</u>

The Supreme Court's holding in *Harrington* that the Sacklers, as non-debtors, are not entitled to the protections of the Bankruptcy Code eliminates any basis for the preliminary injunction. If Congress in 11 U.S.C. § 105(a) did not provide the bankruptcy court with the authority to grant permanent injunctive relief to the Sacklers, it cannot have granted preliminary injunctive authority to preliminarily provide the same relief to prevent the same supposed interferences—factual overlap and indemnity—that the Supreme Court rejected out of hand. Instead, just as it had with discharge relief, Congress intended to afford the relief of a stay of litigation only to "debtors." *See* 11 U.S.C. § 362(a). As the Court held, section 105(a) does not expand relief under the Bankruptcy Code.

Moreover, even if preliminary injunction could be granted to protect non-debtors in some circumstances, the preliminary injunction here is unwarranted. The injunction is not necessary to facilitate Purdue's reorganization, and the speculative harms asserted by Purdue pale in

comparison to the harms that the States and the public interest they represent sustain by having their ability to take civil and administrative actions for the public health and safety restrained amid an opioid crisis.

Finally, both Appellees and the bankruptcy court were wrong to rely on this Court's decision in *Dunaway*. *Dunaway* does nothing to support extension of the injunction in today's factual, procedural, and jurisprudential context.

## ARGUMENT

### I.    Harrington Removes the Basis for The Preliminary Injunction Against the Sacklers and Their Trusts and Affiliates

The Supreme Court held in *Harrington* that the Sacklers, having failed to file for bankruptcy and place all of their assets on the table in bankruptcy's "simple bargain," are not entitled to receive the protections of bankruptcy that the Bankruptcy Code's text "reserves to . . . 'the debtor.'"  Harrington, 144 S. Ct. at 2085 (2024) (quoting 11 U.S.C. §1141(d)(1)(A)); *see id.* ("The Sacklers have not agreed to place anything approaching their full assets on the table for opioid victims.  Yet they seek a judicial order that would extinguish virtually all claims against them for fraud, willful injury, and even wrongful death, all without the consent of those who have brought and seek to bring such claims.  In each of these ways, the Sacklers seek to pay less than the code ordinarily requires and receive more than it normally permits."); *id.* at 2078 ("Purdue's long-time owners, members of the Sackler family, confronted a growing number of suits too.  But instead of declaring bankruptcy, they chose a different path.  From the court overseeing Purdue's bankruptcy, they sought and won an order extinguishing vast numbers of existing and potential claims against them.  They obtained all this without securing the consent of those affected or

placing anything approaching their total assets on the table for their creditors.").[1]  The High Court therefore reversed the Court of Appeals, agreeing with this Court's conclusion that neither 11 U.S.C. § 1123(b)(6) nor 11 U.S.C. 105(a) afforded a basis to provide to the Sacklers the injunctive relief that the Code reserves for debtors.

Contrary to the determination of the bankruptcy court below, *Harrington* compels the conclusion that the Sacklers are not entitled to preliminary injunctive relief.  If the Bankruptcy Code (including section 105(a)) offers no permanent injunctive relief to non-debtors based on the arguments of factual interconnectedness and indemnification that Purdue has raised repeatedly, it section 105(a)'s grant of limited authority to issue orders "necessary or appropriate to carry out the provisions of this title" cannot be read to afford the same relief on a preliminary basis. 11 U.S.C. §105(a).  The Supreme Court recognized as much in *Harrington*, noting that section "105(a) alone cannot justify" the imposition of nonconsensual third-party releases because it serves only to "carry out" authorities expressly conferred "elsewhere in the code."  *Harrington v. Purdue Pharma L. P.*, 144 S. Ct. 2071, 2082 (2024) (internal quotation marks and citations omitted).  Logically, if Congress did not provide permanent relief for the concerns Purdue has raised, neither can it have provided preliminary injunctive relief.  This becomes all the more clear

---

[1]    The Supreme Court analyzed related provisions and found that they too reflect congressional concern to provide relief to debtors.  In so stating, the Supreme Court articulated that a major backdrop of the Bankruptcy Code is this "simple bargain" between debtors' assets and the benefits the code affords them. *Id.* at 2074, 2081, 2085, 2086. Against this backdrop, the Supreme Court examined several provisions of the Bankruptcy Code related to releases and discharge, including sections 1123(b)(6), 524, and 1141. In every instance, the Supreme Court held that these provisions provided for benefits that were only available to debtors. It held that traditional releases available under sections 524 and 1141 were explicitly available for debtors and it rejected a possible exception that would be created by section 1123. It held language included in 1123(b)(6) could not be read to be more expansive than other provisions in 1123, "all of which concern the debtor." *Id.* at 2083.

when one considers that the Supreme Court's back-of-the-hand treatment of these speculative off-the-cuff justifications may be more than they are worth.

The conclusion that the Bankruptcy Code provides no preliminary injunctive relief against litigation against non-debtors is consistent given that traditional principles of federal equity jurisprudence, which section 105(a) does not disturb, lead to precisely the same result. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) (preliminary injunctive relief must be of "similar character" to permanent relief). Simply put, if there is no permanent relief in the Bankruptcy Code "to carry out," under section 105(a) and traditional principles, there can be no preliminary injunctive relief.[2] *Id.* at 326 (a preliminary injunction is "appropriate to grant intermediate relief of the same character as that which may be granted finally.") (quoting *De Beers Consol. Mines v. U.S.*, 325 U.S. 212, 220 (1945)); *Weston v. Bayne, No. 9:22-CV-621 (LEK/ATB), 2023 WL 8183219, at *3 (N.D.N.Y. Nov. 27, 2023)* (relying on *De Beers* in holding that an injunction is "inappropriate where the injunction deals with a matter wholly outside the issues in the suit") (internal citations omitted); *Kosha, LLC v. Alford*, No. 4:19-CV-172 (CDL), 2019 WL 6050725, at *2 (M.D. Ga. Nov. 7, 2019) ("Before exercising such authority, the court should assure itself that the preliminary injunctive relief sought is of the same kind and character as the permanent injunctive relief that is claimed and is necessary to protect the court's authority to grant that permanent relief should it eventually determine it is appropriate."); *Barnes v. Tarrytown Urb. Renewal Agency,* 338 F. Supp. 257, 262 (S.D.N.Y. 1971) ("I am constrained to hold that a preliminary injunction cannot issue where there is no probability of success for [a litigant's] efforts to permanently enjoin her eviction.")

---

[2]    Nor does Bankruptcy Rule 7065, which incorporates Rule 65 of the Federal Rules of Civil Procedures, provide any independent basis for a grant of a preliminary injunction.

It is a longstanding legal reality that a bankruptcy court cannot use section 105(a) to provide protections that the Bankruptcy Code does not afford. *Harrington,* 144 S. Ct. at 2082 n.2. (11 U.S.C. §105(a) cannot justify new rights and benefits for nondebtors that are not otherwise "expressly conferred elsewhere in the code."). Despite this, Purdue now contends, and the bankruptcy court held, that the preliminary injunction is justified because protecting the Sacklers is "appropriate and necessary" to enable it to reorganize. **A0812**. Purdue has argued that if its creditors are free to pursue their direct claims against the Sacklers, Purdue's reorganization will suffer because it will (1) be dragged into litigation and have to comply with discovery in that litigation and (2) because it may have to indemnify the Sacklers. *See Dunaway*, 619 B.R. at 59; **A0001-1506**. Purdue thus argues that, if litigation against its owners is not paused, it *might* not be able to reorganize, by which it appears to mean carry out the reorganization that it wishes, *i.e.*, with a plan that includes and protects the Sacklers. Purdue claims that as a result, all the work in the bankruptcy for five years could be lost.[3]

The Supreme Court, however, rejected Purdue's concerns with factual overlap and indemnity obligations because these concerns failed to override Congress's decision to "reserve" the protections of discharge to "the debtor." *See Harrington*, 144 S. Ct. at 2087 n.7. The Court noted that concerns like Purdue's did not override the "elemental distinctions" embedded in the Congress' choice to make the injunctive protections the Bankruptcy Code, like other bankruptcy relief, available solely "to debtors." *Id.* at 2084 n.3. In footnote 3, the *Harrington* Court made clear that it made no difference that creditors' claims against the Sacklers might be factually

---

[3]    Judge Drain, however, believed based on the evidence that work had not been as successful as he had hoped. **A0065-0333**. Indeed, if the Sacklers can be pursued to greater liability, the work, accomplished with the artificial constraints that the bankruptcy court has provided, may not maximize the value of the Estate.

relevant to claims against Purdue or might overlap with the Estate's claims against the Sacklers. *Id.* In footnote 7, the Court noted that Purdue's concerns regarding indemnification likewise did not give rise to a Bankruptcy Code grant of injunctive relief to protect the Sacklers as non-debtors. *Id.* at 2087 n.7. If these are problems, the Bankruptcy Code does solve them by affording injunctive relief to protect non-debtors.

There is simply no reason to believe that the Bankruptcy Code somehow nevertheless addresses these issues by providing preliminary injunctive relief barring the investigation of, and litigation against, non-debtors like the Sacklers. The Bankruptcy Code, *Harrington* confirms, does not elevate protection of the Sacklers or protection of Purdue's reorganization over every other possible policy and against every other competing obligation that a party may have to other courts or government agencies. *Harrington*, 144 S. Ct. at 2088; *see also Bartenwerfer v. Buckley*, 598 U.S. 69 (2023). As in other judicial contexts, cases continue successfully despite the possibility that one or more litigants may be involved in other litigation.

It should be noted that what Purdue seeks here is not the difference between a reorganization or no reorganization. It is the difference between the reorganization of its choosing and a different reorganization that does not protect the Sacklers. Although Purdue continues to quibble unpersuasively, there is no question that Purdue has sufficient resources to reorganize under a different plan that does not involve the Sacklers. An order under section 105(a) freeing Purdue to focus on mediation, as a matter of law, cannot be "necessary" to carry out Chapter 11.

All of this analysis is confirmed by the text of the automatic stay that the Bankruptcy Code provides to temporarily pause claims against "debtors." 11 U.S.C. § 362(a). The text of section 362 and its limitation to "debtors" reinforces these conclusions that the Code does not authorize the preliminary injunctive relief to non-debtors. Like section 541's discharge provisions, the text

of the automatic stay applies by its terms to "debtors" and to claims against their property.  11 U.S.C. § 362(a).  Even then, as with the relief of discharge, the automatic stay provided to debtors is limited by significant exceptions that give effect to competing policy interests—including, *inter alia*, the constitutionally significant exception for government unit police power litigation and other similar exceptions that effectuate overriding public policies.  *See* 11 U.S.C. § 362(b).  Although section 105(a) has been held to authorize supplementation of the automatic stay, courts this supplementation has also been limited.  *See Penn Terra Ltd. Dept of Environmental Resources, Com. of Pa.*, 733 F.2d 267, 273 (3d Cir. 1984).  The same "elemental distinctions" and textual analysis that the Supreme Court noted in *Harrington* for purposes of recognizing the limitations on discharge also mandate that Congress did not intend to provide to non-debtors relief similar to that of the automatic stay.  For all the reasons that the Supreme Court recognized in *Harrington*, Congress did not provide such protections for non-debtors.  To hold otherwise runs a significant risk that bankruptcy may become—as the Sacklers would make of it here—a haven for wrongdoers.  *See In re Berry Estates, Inc.*, 812 F.2d 67, 71 (2d Cir. 1987) ("Neither did [Congress] intend that the bankruptcy court be a haven for wrongdoers.").

By eliminating the possibility of permanent relief, both the holding and the reasoning of *Harrington* make clear that the same relief is not available here on a temporary basis.

## II.    Assuming Arguendo That a Preliminary Injunction Is Authorized, the Facts of this Case Do Not Warrant Granting One

Assuming *arguendo* that a preliminary injunction remains authorized notwithstanding *Harrington*, such an injunction is unwarranted here.  Among other reasons, the states' rights to the civil and administrative enftheorcement of state laws to protect the public health, safety, and welfare of the people in an opioid crisis, U.S. Const. Amend. X, far outweigh the interests of a private debtor to have a resolution that includes its owners.    For this and for other reasons, the

14

traditional injunctive factors weigh strongly against granting *further extending* the preliminary injunctive relief here—which if anything is frustrating not furthering, Purdue's successful reorganization.

**A.  Likelihood of Success on The Merits.**

Purdue argues that it is likely to successfully reorganize and therefore that this factor weighs in its favor.  But this is too easy.  Purdue overlooks that the conduct preliminarily enjoined must have some effect on the likelihood of success on the merits.

If the conduct enjoined has no bearing on the likelihood of success, then a preliminary injunction is not warranted.  *Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) ("We hold that there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint. This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself."); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) ("Thus, a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.").  Here, as noted above, it does not.  If "likelihood of success" means only that Purdue will someday reorganize, there is no need for a preliminary injunction.  Indeed, it is difficult to see, after five years of non-success, what bearing if any the preliminary injunction has had on Purdue's ability to reorganize. If anything, by insulating the Sacklers from pressure, the preliminary injunction brought about the delay in obtaining the additional funds from the Sacklers to satisfy creditors.  After five years, it may well be that the preliminary injunction is the problem, not the solution.

**B.  Irreparable Harm to Purdue.**

The irreparable harm that Purdue claims is entirely speculative.  *See In re Roman Catholic Diocese of Rockville Centre, NY*, 651 B.R. 622, 664 (S.D.N.Y. 2023) (holding that the debtors' "distraction argument" did not warrant a stay of litigation because "the Debtor fails to show that the harms complained of will have an imminent and irreparable effect on those chances of success [during the mediation].").  In fact, there is no evidence of record to support the claim.  If Purdue is distracted by litigation, or if its creditors are distracted by litigation, it says it will not succeed.  Yet, such easy claims could justify a preliminary injunction on the barest of speculation.  They come a dime a dozen.  It seems extremely unlikely that Purdue or its creditors will be distracted from the mediation of *trillions* of dollars in liability over opioid crisis claims simply because litigants may file claims somewhere else.  In fact, what may cause creditors' minds to stray from the settlement may help the Sacklers gain additional focus on the mediation.  At any rate, there is no record that establishes that these harms will come to pass, and they are merely easy claims that likely do not matter.

At any rate, in addition to being speculative, Purdue's claims of irreparable harm are also trivial by comparison.

**C.  The Irreparable Harm to States and to the Public in Law Enforcement and Compensation Vastly Outweighs the Speculative and minimal private harms to Purdue.**

At any rate, in addition to being speculative, Purdue's claims are also trivial.  The interest in freeing states and other government units to pursue civil, administrative, and regulatory law enforcement against an opioid crisis that has produced trillion-dollar harms and that adds hundreds more dead daily to the millions of individuals already killed or addicted, vastly exceeds Purdue's minimal-by-comparison private interest in obtaining a "fresh start" so that it can continue close up

shop.  Although the State of Maryland maintains that its interest in enforcing its laws regarding public health and safety as among the strongest in any case, *Maryland v. King* 567 U.S. 1, 3 (2012 Roberts, C.J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."), in a marketplace where the injured continue to use opioids and die and where market actors have not abated their wrongful conduct, the interest of the states in maintaining the freedom to enforce laws protecting their citizens is paramount.  Although it is very much the opioid crisis that causes states to be present in this bankruptcy, this case sets a precedent for vast amounts of other cases that constitute the day-to-day work of the states in protecting their citizens.  There is extraordinary harm to the public interest from the injunction of states' law enforcement powers.  Indeed, it is unlikely that Congress intended to enable bankruptcy courts to foreclose state efforts to protect the public health and safety to allow debtors and others to focus on bankruptcy mediation.

State and federal law frames the playing field in which individuals or entities who would do wrong must operate.  If the states cannot enforce rules swiftly and thoroughly, harm to the public invariably follows.  The opioid crisis has been one of the most extreme examples.  In pausing state law enforcement, the bankruptcy court has elevated private concerns over public needs.

As the police power exception and other provisions of the Bankruptcy Code demonstrate, however, Congress struck a different balance that is presumptively in favor of the states' interests and the public interest, which are in this regard one and the same.  When the states are considered— which they now must be--the balance of harms and the public interest overwhelmingly require the preliminary injunction—which for five years has accomplished nothing for the reorganization and has left the public unprotected—to expire.

17

**III.    This Court's Decision in *Dunaway* Provides Zero Support For Continuing The Preliminary Injunction**

Purdue argued below, and the bankruptcy court decided, that the Court's decision in *Dunaway* based on the state of the proceedings that existed more four years ago warrants the extensions. **A1145** [ECF 538].

This Court's decision in *Dunaway* does not support the injunction here.  In *Dunaway*, this Court was very clear that the ultimate legal question of whether the Sacklers might obtain non-consensual non-debtor releases was not then before it, 619 B.R. at 62, and that the record had not been fully developed, *see id.* at 58-59 ("It bears noting that the Settlement Structure is just that— a framework for negotiation, not a final settlement—and its final form cannot be presumed to be one that 'hundreds, if not thousands, of government entities' will oppose.  It cannot even be assumed that Appellants will object to a final form of settlement.").  This Court also lacked the benefit of both *Harrington's* overruling of existing Second Circuit *dicta* and its rulings—contrary to existing Second Circuit holdings like *SPV*—concerning the effect of indemnification obligations and factual interconnectedness on the ultimate question of whether the harms asserted by Purdue made a difference.  Finally, the then young preliminary injunction had not at that point failed for years to produce a successful reorganization. *Dunaway* does not support the extensions here.

<u>**CONCLUSION**</u>

For the foregoing reasons, if it ever was appropriate, the preliminary injunction in invalid and can no longer be maintained.  The Court should vacate the preliminary injunction.

Respectfully Submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ *Brian Edmunds*
BRIAN T. EDMUNDS (*pro hac vice*)
SARAH A. ZADROZNY
Assistant Attorneys General

Office of the Attorney General
200 St. Paul Place
Baltimore, MD 21202
(410) 576-6383
bedmunds@oag.state.md.us

*Attorneys for the State of Maryland*