# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>PURDUE PHARMA L.P., *et al.*,<br><br>    Debtors, | Case No. 7:24-cv-07042-CM<br><br>[rel. 7:21-cv-07532-CM] |
| STATE OF MARYLAND,<br><br>    Appellant,<br><br>v.<br><br>PURDUE PHARMA L.P., *et al*., and THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PURDUE PHARMA L.P., *et al*.,<br><br>    Appellees. | On Appeal from the United States Bankruptcy Court for the Southern District of New York (Lane, J.) |

## BRIEF OF APPELLEE THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PURDUE PHARMA L.P., *ET AL.*

Z.W. Julius Chen (*pro hac vice* pending)
(chenj@akingump.com)
Kristen E. Loveland (*pro hac vice* forthcoming)
(kloveland@akingump.com)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

Mitchell P. Hurley
(mhurley@akingump.com)
Arik Preis
(apreis@akingump.com)
Sara L. Brauner
(sbrauner@akingump.com)
Katherine Porter
(kporter@akingump.com)
Theodore J. Salwen
(jsalwen@akingump.com)
Patrick J. Glackin
(pglackin@akingump.com)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, N.Y. 10036-6745
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to The Official Committee of Unsecured Creditors of Purdue Pharma L.P., et al.*

## TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................. 1

ARGUMENT ................................................................................................................................. 4

    THE BANKRUPTCY COURT'S CONSIDERED JUDGMENT THAT A
    TEMPORARY INJUNCTION REACHING THE RELATED PARTIES WAS
    NECESSARY SHOULD BE AFFIRMED ........................................................................ 4

        A.    Section 105(a) Authorizes the PI Orders Extending the Preliminary
               Injunction ................................................................................................................ 4

        B.    The Clear Harm to the Chapter 11 Cases that Would Result from
               Terminating the Preliminary Injunction at this Critical Time
               Supports the PI Orders ............................................................................................ 7

CONCLUSION ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Bernard L. Madoff Inv. Sec., LLC*,
    512 F. App'x 18 (2d Cir. 2013) ............................................................................................. 4, 9

*De Beers Consol. Mines v. United States*,
    325 U.S. 212 (1945) ..................................................................................................................5

*Deckert v. Indep. Shares Corp.*,
    311 U.S. 282 (1940) ..................................................................................................................5

*Dunaway v. Purdue Pharma. L.P. (In re Purdue Pharma. L.P.)*,
    619 B.R. 38 (S.D.N.Y. 2020) ................................................................................................ 4, 7

*Feld v. Zale Corp. (In re Zale Corp.)*,
    62 F.3d 746 (5th Cir. 1995) ......................................................................................................6

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
    527 U.S. 308 (1999) ..................................................................................................................5

*Harrington v. Purdue Pharma L.P.*,
    144 S. Ct. 2071 (2024) ..................................................................................................... *passim*

*In re Owens Corning*,
    419 F.3d 195 (3d Cir. 2005) .....................................................................................................5

*In re Parlement Techs., Inc.*,
    661 B.R. 722 (Bankr. D. Del. 2024) ........................................................................................6

*Resorts Int'l v. Lowenschuss (In re Lowenschuss)*,
    67 F.3d 1394 (9th Cir. 1995) ....................................................................................................6

*Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*,
    502 F.3d 1086 (9th Cir. 2007) ..................................................................................................6

**Statutes**

11 U.S.C. § 105(a) ........................................................................................................... *passim*

11 U.S.C. § 362 ......................................................................................................................4

11 U.S.C. § 362(a)(3) ..............................................................................................................7

11 U.S.C. § 524(e) ..................................................................................................................6

11 U.S.C. § 1103 ...........................................................................................................................1

**Other Authorities**

2 COLLIER ON BANKRUPTCY ¶ 105.04 (16th ed. 2024) ....................................................................4

**INTRODUCTION AND SUMMARY OF ARGUMENT**

The Official Committee of Unsecured Creditors of Purdue Pharma L.P., et al. (the "**Official Committee**") was appointed pursuant to section 1103 of title 11 of the United States Code (the "**Bankruptcy Code**") at the outset of the Debtors' chapter 11 cases (the "**Chapter 11 Cases**") to represent the interests of *all* unsecured creditors with claims against the Debtors.  Since that time, through the Chapter 11 Cases' multiple twists and turns, the Official Committee has worked faithfully and tirelessly to carry out its fiduciary obligation to act in the best interests of all unsecured creditors in the Chapter 11 Cases—the states, municipalities, tribes, public schools, hospitals, third-party payors and health insurance carriers, trade creditors, and tens of thousands of individual victims (including children born with NAS) of Purdue's conduct.  In that role, the Official Committee carefully considered each of the limited extensions of the preliminary injunction at issue in this appeal and determined that each one was necessary in order to protect the best interests of all creditors and improve the chances of a successful reorganization that would maximize value for all of the Debtors' creditors.

The Chapter 11 Cases are currently poised on the verge of a pivotal—and precarious—moment that may have profound consequences on the outcome for all creditors.  As this Court is aware, the Debtors' most valuable assets are the claims against the Debtors' ultimate owners, the Sacklers, and their related entities.  Any hope for a meaningful creditor recovery depends on recovering value on account of those claims—either through litigation or settlement.  The parties previously negotiated a settlement, which was incorporated into a plan of reorganization that would have recovered significant value on account of the claims against the Sacklers.  Although that plan received overwhelming creditor support, the order confirming the plan was appealed to this Court, then to the Second Circuit, and ultimately to the Supreme Court of the United States, which held that the nonconsensual third-party releases that were integral to the settlement were

1

not permissible under the Bankruptcy Code. *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071 (2024). And so, five years after the Debtors first commenced the Chapter 11 Cases, the parties are back to the drawing board and must determine whether an alternative settlement can be negotiated that will bring in substantial value and win widespread creditor support, or whether the estates will commence, and all other parties will return, to active litigation of their claims.

Just two weeks after the Supreme Court issued its decision in *Harrington*, the Bankruptcy Court appointed two experienced mediators—the Honorable Shelley C. Chapman (Ret.) and Eric D. Green—to guide this process. Commencing mediation was unanimously supported by the parties, including by all states. Since that time, multiple parties have worked tirelessly to see whether a new consensual resolution can be negotiated. The issues under discussion are difficult and complex. Nevertheless, slowly but surely, progress has been made. Accordingly, the court-appointed mediators have recommended that the Debtors seek very brief extensions of the preliminary injunction in order to enable the continuation of mediation.

At each such juncture, the Official Committee has carefully considered the progress in mediation and the facts and circumstances of the Chapter 11 Cases and has determined to support the requested injunction extension as in the best interests of all creditors. Likewise, informal coalitions of creditors representing numerous states and ad hoc groups representing states and other governmental entities and more than 60,000 personal injury victims have either supported or not opposed the mediation process and the related extensions of the preliminary injunction for the purposes of facilitating a productive mediation. On each occasion, the Official Committee's decision to support the preliminary injunction was not made lightly; it was based on the needs (and prospects) of the mediation and the cases at that moment in time.

As Judge Chapman explained at the most recent preliminary injunction hearing, "the mediation to date has made significant and important progress," "many . . . critical threshold issues have been resolved," and the "parties are getting closer and closer by the day [to a settlement] and the remaining open issues in our view are resolvable." SA-6503–04.[1] Likewise, counsel for the State of New York (a member of the former so-called Non-Consenting State Group that did not initially, but ultimately did, support the plan confirmed by the Bankruptcy Court in 2021, and is now a member of a state negotiating group in the mediation) stated that New York, on behalf of itself and 13 other states, was "pleased to be able to report . . . on behalf of our entire committee that there is substantial cause for optimism that the mediation can and will produce a broadly-acceptable consensual resolution. . . . [T]he *possibility of a successful consensual resolution is now within view*." SA-6526 (emphasis added).

Nevertheless, one state, Maryland, has appealed the Bankruptcy Court's recent preliminary injunction orders (the "**PI Orders**")[2] insofar as they apply to actions against parties related to the Debtors (the "**Related Parties**"). In its appellate brief, Maryland argues principally that (i) *Harrington* removes the basis for a preliminary injunction against the Sacklers and their trusts and affiliates, and (ii) even if a preliminary injunction is authorized, the facts of this case do not warrant granting one. Maryland is wrong on both points.[3]

---

[1] Citations prefaced with the letter "A" refer to Appellant's Appendix. Citations prefaced with the letters "SA" refer to Appellee Purdue Pharma L.P.'s Appendix.

[2] Specifically, Maryland appeals the *Thirty-Seventh Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction* (A0817) and the *Thirty-Eighth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction* (A1199). Its appeal also anticipates the *Thirty-Ninth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction* (SA-4458), entered on November 4, 2024.

[3] Maryland submitted an 18-page brief on appeal making new arguments and expanding upon its arguments before the Bankruptcy Court. In light of the Court's direction on briefing, the Official Committee submits a shortened response to address certain key issues that are especially important to the creditors as a whole. For the avoidance of doubt, the Official Committee does not waive any arguments or issues by not including them in this brief response.

3

**ARGUMENT**

**THE BANKRUPTCY COURT'S CONSIDERED JUDGMENT THAT A TEMPORARY INJUNCTION REACHING THE RELATED PARTIES WAS NECESSARY SHOULD BE AFFIRMED**

    **A. Section 105(a) Authorizes the PI Orders Extending the Preliminary Injunction**

Settled principles and established precedent—including this Court's own decision in *Dunaway v. Purdue Pharma. L.P. (In re Purdue Pharma. L.P.),* 619 B.R. 38 (S.D.N.Y. 2020) ("***Dunaway***")—foreclose Maryland's argument that the extensions of the preliminary injunction violate the Bankruptcy Code.  Although Maryland's three paragraphs of briefing below (A0782–84) have swelled on appeal to several pages of new arguments, Maryland still cannot show that bankruptcy courts lack the power to preliminarily enjoin litigation against third parties.

As this Court recognized when upholding the same preliminary injunction at issue in this latest appeal, "§ 105(a) is properly used to enjoin creditors' lawsuits against third parties where the injunction plays an important part in the debtor's reorganization plan' or where the action to be enjoined 'will have an immediate adverse economic consequence for the debtor's estate.'" *Dunaway*, 619 B.R. at 57 (quoting *In re Bernard L. Madoff Inv. Sec., LLC*, 512 F. App'x 18, 20 (2d Cir. 2013)).  Legislative history confirms the propriety of such injunctions.  Citing section 105, Congress advised that where section 362 does not automatically stay an action, the bankruptcy court has the power "to determine whether a particular action . . . should be stayed" because it "may be harming the estate."  2 COLLIER ON BANKRUPTCY ¶ 105.04 (16th ed. 2024) (quoting S. REP. NO. 95-989, at 51 (1978); H. REP. NO. 95-595, at 341–42 (1977)).

Maryland now invites this Court to ignore its prior decision in *Dunaway* and hold that bankruptcy courts cannot temporarily enjoin litigation against third parties, no matter the impact on the estate or the debtor's prospect for a successful bankruptcy.  But Maryland's reasoning is riddled with errors.

4

*First*, Maryland argues (Br. 10–11) that this Court may not preliminarily enjoin such litigation if it could not permanently do so. But the cases on which it relies are inapposite. Both of the cited Supreme Court cases addressed preliminary injunctions outside the bankruptcy context that prevented the transfer of defendants' assets, in order to ensure those funds remained available to satisfy potential future money judgments. *See Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 311–12 (1999); *De Beers Consol. Mines v. United States*, 325 U.S. 212, 215–16 (1945). Courts have held that *Grupo Mexicano*'s restriction on preliminary relief simply does not apply to injunctions in the bankruptcy context that flow from a bankruptcy court's *in rem* jurisdiction and obligation to protect a *res*. *See, e.g.*, *In re Owens Corning*, 419 F.3d 195, 209 (3d Cir. 2005) ("[H]ad the company in *Grupo Mexicano* been in bankruptcy, the bankruptcy court would have had the authority to implement the remedy the district court lacked authority to order under general equity power outside the bankruptcy context.").

Even were that not the case, the Supreme Court overturned the injunctions at issue because they dealt "with a matter lying wholly outside the issues in the suit" and "with property which in no circumstances can be dealt with in any final injunction that may be entered." *De Beers*, 325 U.S. at 220. Here, by contrast, a plan of reorganization may include a settlement to be paid by the Sackler assets implicated by the PI Orders and may also include equitable terms, such as a release granted by any consenting creditor, including those subject to the Bankruptcy Court's preliminary injunction. *See Harrington*, 144 S. Ct at 2087–88. Accordingly, this bankruptcy case is closer to *Deckert v. Indep. Shares Corp.*, where the Supreme Court approved a preliminary injunction that aided the provision of equitable relief—one of "[t]he principal objects of the suit." 311 U.S. 282, 289 (1940); *see Grupo Mexicano*, 527 U.S. at 324 (distinguishing *Deckert* on that ground).

5

*Second*, Maryland argues (Br. 12–14) that *Harrington* upends the preliminary injunction despite the Supreme Court's express admonition that it was "[c]onfining [itself] to the question presented": "[W]e hold only that the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants." 144 S. Ct. at 2088. As courts to address the question since *Harrington* have concluded, the Supreme Court did not *sub silentio* overturn decades of precedent authorizing preliminary injunctions under section 105(a). *See, e.g.*, *In re Parlement Techs., Inc.*, 661 B.R. 722, 728 (Bankr. D. Del. 2024) (reading *Harrington* to provide "[no] reason to reconsider" whether section 105(a) allows "for the entry of a preliminary injunction").

Indeed, even circuits that barred nonconsensual third-party releases prior to the Supreme Court's ruling in *Harrington* permitted temporary injunctions of third-party litigation in aid of the reorganization process "'if [the temporary stay] contribute[d] to the debtor's efforts to achieve rehabilitation.'" *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 761 (5th Cir. 1995) (quoting *Teachers Ins. & Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2d Cir.1986), and contrasting "impropriety of a permanent injunction"); *see also Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1093 (9th Cir. 2007) (acknowledging bankruptcy court's power to temporarily stay litigation against nondebtors pursuant to section 105(a)); *Resorts Int'l v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401 (9th Cir. 1995) (acknowledging Ninth Circuit had repeatedly found that section 524(e) prohibits third party releases) (citing *Commercial Wholesalers, Inc. v. Investors Commercial Corp*, 172 F.2d 800, 801 (9th Cir. 1949)).

In any event, the preliminary injunction is entirely consistent with *Harrington*'s treatment of section 105(a) because it ***does*** help carry out the provisions of title 11. *Contra* Br. 13–14. For one thing, the preliminary injunction prevents efforts to "exercise control over property of the estate," exactly as Congress contemplated. 11 U.S.C. § 362(a)(3). As the Bankruptcy Court found, lifting the preliminary injunction "would threaten the estate's ***most valuable asset***; that is the estate's claims against the Sacklers." A0443 (emphasis added). For another, the preliminary injunction avoids "[a] value destructive litigation dynamic," A0814, with the Debtors "projected to spend hundreds of millions of dollars on legal fees and expenses" and potentially be subjected to new legal liabilities, thereby depleting the estate, A1193; *see also Dunaway*, 619 B.R. at 58 (finding that lifting injunction would "increase the Debtors' litigation expenses as well as their liabilities, whether due to the collateral estoppel impact of findings . . . or as a result of . . . contribution and/or indemnification claims"). Nothing in Maryland's brief changes that reality or its legal implications.

### B. The Clear Harm to the Chapter 11 Cases that Would Result from Terminating the Preliminary Injunction at this Critical Time Supports the PI Orders

Maryland argues that even if the preliminary injunction is authorized, the PI Orders at issue in this appeal are not warranted. Br. 14–17. Nothing could be further from the truth.

The Chapter 11 Cases are at a critical juncture. In light of the Supreme Court's decision in *Harrington*, which overturned the order confirming the Debtors' plan of reorganization, the parties are actively engaged in complex and difficult negotiations to determine whether it is possible to reach an alternative resolution that will garner widespread creditor support and deliver significant creditor value. *See* SA-5200. The mediation is one of "breathtaking complexity" (SA-6516) involving "many, many parties" and "hundreds of calls and Zoom meetings and in-person meetings and probably thousands of hours of time" (SA-6502–03). There is no guarantee that the

7

mediation will ultimately be successful.  But from the creditor perspective, a multibillion dollar guaranteed near-term recovery—if an acceptable resolution can be negotiated—is preferable to protracted and expensive litigation.  That is all the more true today, given that "the possibility of a successful consensual resolution is now within view." SA-6526.

Terminating the preliminary injunction at this time would unleash a torrent of litigation that would disrupt (and potentially be fatal to) the mediation.  Although Maryland calls this risk "entirely speculative" (Br. 16), the risk is entirely real and a matter of simple common sense.  As Judge Chapman advised the Bankruptcy Court, "the protection of the preliminary injunction and the absence of material active litigation among the parties during the mediation has been critical to the progress that has been made to date." SA-6504.  Moreover, "in order for the mediation to succeed, [the mediators] need the full attention, the full, undistracted attention of all the parties. And that would be impaired by the launch of litigation. . . . ***No distraction, frankly, can be tolerated***. . . . [I]f litigation were to start on any level, we would lose the progress we had made." SA-6505 (emphasis added).  For those reasons, "termination of the injunction now would greatly jeopardize [the mediation's] ability to achieve a resolution that will broadly benefit all stakeholders." SA-6503–04.

To be sure, there may come a time—and it may be soon—when it makes sense to end the preliminary injunction, whether because mediation failed or stalled or for other reasons.  The Official Committee and other parties actively engaged in the Chapter 11 Cases are watching closely and carefully considering each proposed extension of the preliminary injunction.[4]  But it

---

[4] *See* SA-3547 (Official Committee supporting extension); SA-3564 (same); SA-4413 (same); SA-3536 (New York and 47 states stating that they did not oppose the "bottom line relief sought for the purpose of mediation"); SA-3541 (New York and 13 other states, members of the AG Negotiating Committee Mediation Party stating that they did not oppose extension given progress in mediation); SA-3556 (same); SA-4445 (same); SA-6526 (same); SA-3544; SA-3570; SA-4391; *see also* SA-3559; SA-6531 (counsel for Ad Hoc Group of Personal Injury Victims stating "we are not opposing the extension").  The Official Committee's most recent decision to support continuing the preliminary

8

is absolutely certain that terminating the preliminary injunction prematurely, without consideration of the overall case dynamics, will impose substantial costs on the estates and eat into value that otherwise could be available to distribute to creditors, as well as jeopardize the realistic prospect of a reorganization that maximizes recoveries for all creditors.

Accordingly, as the fiduciary for all unsecured creditors, the Official Committee determined in connection with each appealed extension that it would be harmful to pivot to full scale litigation at those junctures. Indeed, the Official Committee, itself, is prepared to prosecute the estate claims against the Sacklers vigorously, but to date has held back from commencing such litigation in order to give mediation a chance to succeed.[5]

In addition, the PI Orders continue to play an important role in protecting the equal treatment of creditors. As the Official Committee has observed before (including in *Dunaway*),[6] the preliminary injunction is holding back a race to the courthouse, in which creditors will seek a timing advantage not only against one another, but also against the Debtors' estates. Thus, a termination of the preliminary injunction would result in a "chaotic rush to the courthouse—or rather, multiple courthouses." *In re Bernard L. Madoff Inv. Sec.*, 512 F. App'x at 20. Furthermore, individual creditors (like Maryland) will be competing with the estates to obtain judgments and collect the Sacklers' assets for themselves alone, before the assets can be collected by the estates and distributed for the benefit of ***all*** creditors.[7]

---

was made less than two days before the hearing before the Bankruptcy Court. *See* SA-4413 (Official Committee taking no position on extension); SA-6524 (endorsing extension based on recent events).

[5] The Official Committee filed its motion seeking standing to prosecute the estate claims in July—along with a more than 200 page complaint alleging more than 20 causes of action and seeking more than $11.5 billion in recoveries—but agreed to defer a hearing on the motion until October 29, 2024. And while the Bankruptcy Court has stated that the Official Committee will be granted standing, the Official Committee has made clear that it will not immediately prosecute the estate claims until it makes sense to do so, in light of the case circumstances. SA-4414–15.

[6] *See Brief of Appellee the Official Committee of Unsecure Creditors of Purdue Pharma L.P.*, No. 20-03048 (S.D.N.Y. June 22, 2020) [ECF No. 20] at 9–12.

[7] Many assets are not available to satisfy every cause of action.

9

For its part, Maryland argues (Br. 3, 5, 13) that the preliminary injunction has caused harm because it has barred investigation of the Related Parties' misconduct. This is not true. The Official Committee undertook an extensive investigation of the Debtors and Related Parties during the Chapter 11 Cases. The Official Committee coordinated with the Debtors and multiple states and creditor constituencies in carrying out this investigation—including Maryland. *See* SA-3550.

Finally, Maryland insinuates (Br. 12, 13) that the mediation and PI Orders are merely tools to "protect the Sacklers" and force an unwanted plan on creditors. This argument is not only misleading, it is also insulting to the mediators and numerous mediation parties—including the Official Committee, a coalition of states and governmental entities, other creditor groups, and the Debtors—who have been hard at work in the mediation. And it is another argument that Maryland must know is simply not true. To be clear, whatever results from the mediation will honor the Supreme Court's decision in *Harrington*.

## CONCLUSION

This Court should affirm the Bankruptcy Court's PI Orders extending the preliminary injunction.

Dated: November 7, 2024                    Respectfully submitted,

                                                          */s/  Mitchell Hurley*

Mitchell P. Hurley
(mhurley@akingump.com)
Arik Preis
(apreis@akingump.com)
Sara L. Brauner
(sbrauner@akingump.com)
Katherine Porter
(kporter@akingump.com)
Theodore J. Salwen
(jsalwen@akingump.com)
Patrick J. Glackin
(pglackin@akingump.com)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, N.Y. 10036-6745
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Z.W. Julius Chen (*pro hac vice* pending)
(chenj@akingump.com)
Kristen E. Loveland (*pro hac vice* forthcoming)
(kloveland@akingump.com)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

*Counsel to The Official Committee of Unsecured Creditors of Purdue Pharma L.P., et al.*

11

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Bankruptcy Procedure 8015(h), the undersigned certifies that the above memorandum complies with the applicable type-volume limitation of Federal Rule of Bankruptcy Procedure 8015(a)(7)(B) because, excluding the partes of the memorandum exempted by Federal Rule of Bankruptcy Procedure 8015(g), this memorandum contains 3,707 words.  The above memorandum also complies with the typeface requirements of Federal Rule of Bankruptcy Procedure 8015(a)(5) and type-style requirements of Federal Rule of Bankruptcy Procedure 8015(a)(6), as modified by the July 18, 2024 Individual Practices and Procedures—Judge Colleen McMahon § V(D), because this memorandum has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 12-point font.

                                                 /s/  Mitchell Hurley
                                                Mitchell P. Hurley

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2024, I caused true and correct copies of the above memorandum to be served by the Court's Case Management/Electronic Case File (CM/ECF) System to all parties to the above-captioned appeal with CM/ECF access; to counsel for Appellants via email; and to all *pro se* parties to the above-captioned appeal via email and U.S. First Class Mail.

Further, in compliance with the Court's Standing Order dated November 25, 2009, I have caused courtesy copies, marked as such, to be sent via messenger to:

    The Honorable Colleen McMahon
    United States District Court for the
      Southern District of New York
    Daniel Patrick Moynihan United States
      Courthouse
    500 Pearl Street, Room 2550
    New York, NY 10007-1312

                                         /s/ Mitchell Hurley
                                         Mitchell P. Hurley