24-CV-7042

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE: PURDUE PHARMA L.P., *et al.*
BANKRUPTCY APPEAL:

STATE OF MARYLAND,
*Appellant,*

v.

In re PURDUE PHARMA L.P., *et al.*,
*Appellees.*

Appeal from final order of the United States Bankruptcy Court for the
Southern District of New York (*Hon. Sean H. Lane*, *United States Bankruptcy Judge*)

**REPLY BRIEF OF APPELLANT, THE STATE OF MARYLAND**

ANTHONY G. BROWN
Attorney General of Maryland

BRIAN T. EDMUNDS (*pro hac vice*)
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place
Baltimore, Maryland 21202
Tel.: (410) 576-6300
Fax: (410) 576-6656
bedmunds@oag.state.md.us

November 11, 2024

*Attorneys for the State of Maryland*

i

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

ARGUMENT .......................................................................................................................... 13

CONCLUSION ....................................................................................................................... 13

**INTRODUCTION**

Appellees cannot escape the ineluctable legal reality created by the Supreme Court's four-month-old decision in this bankruptcy, rejecting as a basis for permanent injunctive relief the exact arguments that Appellees—undaunted—reassert here in support of a now-five-year-old "temporary" preliminary injunction that appears to be intended to last until most creditors are pressured (by the long-term delay of justice amid the immediate needs of a public health crisis) into "consensual" settlements that the Supreme Court appears to have agreed might be inadequate. *See Harrington v. Purdue Pharma, L.P.*, 144 S. Ct. 2071, 2077-78, 2080, 2084 (2024).  That reality is this:  Because the Supreme Court has held that 11 U.S.C. § 105(a) fails to authorize a permanent injunction of claims against the Sacklers and provides authority only to "'carry out' authorities *expressly conferred elsewhere* in the Code," 144 S. Ct. at 2082 n.2 (emphasis added), section 105(a) also cannot, consistent with *Harrington's* holding, be read to authorize a *preliminary* injunction protecting the Sacklers—let alone a "temporary," five-year-plus preliminary injunction blocking the exercise of state police powers.. *Cf. Retirement Sys. of Ala v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 430-31 (2d Cir. 2004) (rejecting a similarly-justified district court injunction against concurrent state court proceedings and stating "[n]or does the statutory language [of the All Writs and Anti-Injunction Acts] contain an exception for injunctions of limited duration."). Indeed, the preliminary injunction here is no more "necessary and appropriate" "in aid of" the bankruptcy court's jurisdiction to reorganize the Appellees than the injunctive relief in the Twelfth Amended Plan was, especially since the bankruptcy court now has no authority to adjudicate (other than approving a consensual settlement agreement) claims against the Sacklers or grant nonconsensual permanent relief.  The Supreme Court's rejection of Appellees identical arguments in *Harrington* therefore necessarily controls here.

1

## ARGUMENT

In *Harrington,* the Supreme Court rejected the exact arguments that the Appellees have made here and below to justify relief. *See infra* at 3-5 (chart comparing arguments). Consistent with the repeated themes of multiple decisions it has handed down since the Second Circuit issued the decisions on which Appellees' purport to rely, the Supreme Court held—as the Second Circuit had also held—that section 105(a)'s text provided no authority independent authority for a permanent injunction protecting the Sacklers. *See* 144 S. Ct. at 2082 n.2. The Court indeed made clear, as it has time and again, that section 105(a) provides no independent authority for *any* kind of relief not provided elsewhere in the Bankruptcy Code. *See id.* ("As the Second Circuit recognized, however, '§ 105(a) alone cannot justify' the imposition of nonconsensual third-party releases because it serves only to 'carry out' authorities expressly conferred elsewhere in the code. Purdue concedes this point, as do several other plan proponents.") (quoting *In re Purdue Pharma, L.P.,* 69 F.4th 45, 73 (2d Cir. 2023) (other citations omitted).

Looking elsewhere in the Bankruptcy Code, *see id..*, the Court ultimately found no specific grant of authority to enter permanent injunctions protecting the Sacklers. *Id.* at 2088. Instead, the Court found, that injunctive relief of discharge authorized by the Bankruptcy Code is reserved for for non-debtors who tender substantially all of their assets to creditors in bankruptcy's "simple bargain." *Id.* at 2077-78 ("The bankruptcy code contains hundreds of interlocking rules about the relations between a debtor and its creditors. But beneath that complexity lies a simple bargain: A debtor can win a discharge of its debts if it proceeds with honesty and places virtually all its assets on the table for its creditors.") (internal quotation marks and citations omitted); *id.* at 2081 ("Generally, however, a discharge operates only for the benefit of the debtor against its creditors and "does not affect the liability of any other entity.") (quoting 11 U.S.C. § 524(e)); *id.* at 2085

2

("Generally, too, the bankruptcy code reserves this benefit to 'the debtor'—the entity that files for bankruptcy. The plan proponents and the dissent's reading of § 1123(b)(6) would defy these rules by effectively affording to a nondebtor a discharge usually reserved for the debtor alone.") (quoting 11 U.S.C. § 1141(d)(1)) (other citations omitted); *id.* at 2086 ("Every bankruptcy law the parties and their amici have pointed us to, from 1800 until 1978, generally reserved the benefits of discharge to the debtor who offered a fair and full surrender of its property.') (internal quotation marks and citations omitted).

Debtors presented to the Supreme Court the same justifications they have provided here concerning the burdens of overlapping facts and claims, the potential impact of indemnification and contribution obligations, and the possibility that in a hypothetical race to the courthouse, some creditors might prevail against the Sacklers, leaving nothing for others, as the following table demonstrates:

| **Debtors' Supreme Court Brief** | **Debtors Brief in Response Here** |
|---|---|
| without the releases, creditors could pursue claims against the Sacklers that—because they depend on the Debtors' conduct—would trigger indemnification and contribution claims against the Debtors and embroil them in litigation.<br><br>Debtors' Supreme Ct. Br. at 2.<br>If such third-party claims were pursued, they would trigger claims by the Sacklers against the estate for indemnification, or insurance coverage—'likely depleting the res, no matter the ultimate outcome' due to the sheer cost of litigating them<br><br>Debtors' Supreme Ct. Br. at 10. | Moreover, the Debtors would face—and have to litigate—potential indemnification and contribution claims were litigation against their former directors and officers allowed to continue…Litigating [that] will of course be expensive and would distract the Debtors<br><br>Purdue Br. at 38.<br><br>Moreover, and as explained *infra* at 38-39, Maryland's claims against the Sacklers could 'conceivably' lead to contribution or indemnification claims asserted against the Estates (or litigation thereof) and implicate shared insurance coverage.<br><br>Purdue Br. at 26. |
| claims against the Sacklers that legally and factually depend on the Debtors' conduct | claims against Related Parties are inextricably intertwined with those against the Debtors |

3

| | |
|---|---|
| Debtors' Supreme Ct. Br. at 2.<br><br>released claims here are factually and legally intertwined with the conduct of the Debtors and 'directly affect the rest'<br><br>Debtors' Supreme Ct. Br. at 14. | Purdue Br. at 11<br><br>And even litigation nominally against only the Sacklers would inevitably result in the Debtors being the "target of discovery . . . because the claims against the related parties such as the Sacklers [are] inextricably intertwined with those against the debtors."<br><br>Purdue Br. at 19. |
| without the releases, there would be no reorganization and 'unsecured creditors would probably recover nothing from the Debtors' estates'<br><br>Debtors' Supreme Ct. Br. at 26. | And any successful claim for contribution or indemnification would further drain the Estates to the detriment of creditors<br><br>Purdue Br. at 39.<br><br>…that would ensue if the P.I. is lifted and the mediation and the Estates' most valuable assets, along with the recovery potential for other creditors, are compromised and jeopardized<br><br>Purdue at 40.. |
| without the releases, creditors could pursue claims against the Sacklers that—because they depend on the Debtors' conduct—would trigger indemnification and contribution claims against the Debtors and embroil them in litigation.<br><br>Debtors' Supreme Ct. Br. at 2.<br>If such third-party claims were pursued, they would trigger claims by the Sacklers against the estate for indemnification, or insurance coverage—'likely depleting the res, no matter the ultimate outcome' due to the sheer cost of litigating them<br><br>Debtors' Supreme Ct. Br. at 10. | Moreover, the Debtors would face—and have to litigate—potential indemnification and contribution claims were litigation against their former directors and officers allowed to continue…Litigating [that] will of course be expensive and would distract the Debtors<br><br>Appellees' Br. at 38.<br><br>Moreover, and as explained *infra* at 38-39, Maryland's claims against the Sacklers could 'conceivably' lead to contribution or indemnification claims asserted against the Estates (or litigation thereof) and implicate shared insurance coverage.<br><br>Appellees' Br. at 26. |
| claims against the Sacklers that legally and factually depend on the Debtors' conduct<br><br>Debtors' Supreme Ct. Br. at 2. | claims against Related Parties are inextricably intertwined with those against the Debtors<br><br>Appellees' Br. at 11 |

4

| | |
|---|---|
| released claims here are factually and legally intertwined with the conduct of the Debtors and 'directly affect the rest'<br><br>Debtors' Supreme Ct. Br. at 14. | And even litigation nominally against only the Sacklers would inevitably result in the Debtors being the "target of discovery . . . because the claims against the related parties such as the Sacklers [are] inextricably intertwined with those against the debtors."<br><br>Appellees' Br. at 19. |
| without the releases, there would be no reorganization and 'unsecured creditors would probably recover nothing from the Debtors' estates'<br><br>Debtors' Supreme Ct. Br. at 26. | And any successful claim for contribution or indemnification would further drain the Estates to the detriment of creditors<br><br>Appellees' Br. at 39.<br><br>…that would ensue if the P.I. is lifted and the mediation and the Estates' most valuable assets, along with the recovery potential for other creditors, are compromised and jeopardized<br><br>Appellees' Br. at 40. |

The Supreme Court largely disregarded these arguments, relegated its brief rejection of them to two back-of-the-hand footnotes, *see id.* at 2084 n.3 & 2087 n.7, concluding that the Bankruptcy Code does not relieve these concerns and that Appellees should instead present their "policy debate" to "Congress." *Id.* at 2087. The Supreme Court's holding, upon being squarely presented with the very same arguments Appellees make now, was that the text of the Bankruptcy Code does not provide permanent injunctive relief to address them. The same is clearly true of preliminary injunctive relief.

In the wake of *Harrington*, other courts—even bankruptcy courts—have declined to issue preliminary injunctions in cases that Appellees either overlook or miscite. Appellees, for example, quote *In re Diocese of Buffalo, N.Y.*, 663 B.R. 197, 200 (Bankr. W.D.N.Y. 2024), for its statement that "[n]othing in [the *Harrington*] decision *expressly* prohibits a temporary stay of litigation against [non-debtor] parishes and affiliates." *See* Purdue Br. at 32. Inexplicably, however,

5

Appellees omit a second sentence, without the inclusion of which, the quotation is misleading. The full quotation indicates that: "Nothing in [the *Harrington*] decision expressly prohibits a temporary stay of litigation against [non-debtor] parishes and affiliates . . . . <u>However, the outcome in [*Harrington*] strikes the rationale for any further such injunction.</u>") (underlining added)).

Appellees also do not fully disclose the result and reasoning of *In re Parlement Techs., Inc.*, 661 B.R. 722, 729 (Bankr. D. Del. 2024), which Appellees cite for the bankruptcy court's statement *in dicta* that "[*Harrington*] does not preclude the entry of a preliminary injunction" against non-debtor third parties. Purdue Br. at 32. But Appellees fail to note that the Delaware court refused to grant the requested preliminary injunction because it found that the same arguments that Appellees assert here—a potential race to the courthouse, "discovery demands" and "a standard corporate obligation to indemnify officers or directors for liability arising out of the performance of their duties"—were not "sufficient to warrant a preliminary injunction." 661 B.R. at 729-31. If these justifications were sufficient, the bankruptcy court held, "there would be nothing at all extraordinary about [preliminary injunctive] relief."

Debtors also fail to note that *In re Coast to Coast Leasing, LLC*, 661 B.R. 621, 624 (Bankr. N.D. Ill. 2024) appears to deal with a question, expressly left open by *Harrington*, about whether a non-debtor can receive nonconsensual injunctive relief if a plan proposes to pay creditors in full. As the opinion indicates, at the time the bankruptcy court granted a short temporary restraining order enjoining claims against the debtor's principals—who had guaranteed the debtor's debt—the debtor was making adequacy payments to protect creditors interests during the pendency of the bankruptcy. Moreover, a later order in the case indicates that the temporary restraining order has been continued, because the Debtor has proposed a plan that will pay its creditors in full. The case therefore fits within the question, expressly reserved by the

6

Supreme Court in *Harrington*, about whether injunctive relief is warranted in such circumstances. *See* 144 S. Ct. at 2088 ("Nor do we have occasion today to express a view on what qualifies as a consensual release or pass upon a plan that provides for the full satisfaction of claims against a third-party nondebtor.").

Other courts, including the Court of Appeals for the Ninth Circuit, have found that the that the teachings and principles in *Harrington*, have or may have an impact on the availability of preliminary injunctive relief and other unintended benefits that have sometimes been available to non-debtors. *See, e.g, Intl. Petroleum Products and Additives Co., Inc. v. Black Gold S.A.R.L.*, 115 F.4th 1202, 1216–17 (9th Cir. 2024) (explaining that non-debtors may not be entitled to stay-type relief in light of *Harrington*, given limitations on the text of 11 U.S.C. § 362(a) to "debtors" and their property, but finding it unnecessary to decide on the record presented); *In re Diocese of Rochester,* No. AP 23-02014, 2024 WL 4438724, at *3 (Bankr. W.D.N.Y. Oct. 7, 2024) (explaining that the Court had denied a preliminary injunction because *Harrington*'s requirement that releases be consensual made success on the merits unlikely).  Consistent with the Ninth Circuit's observation, *Harrington* indicates that, like Congress' decisions to limit the injunctive effects of discharge to "debtors" and estate property, Congress' limitation of the automatic stay it provided in section 362(a) to "debtors" and their property, restricts the expansion of ancillary provisions that provide for "necessary" or "appropriate" relief to encompass temporary or preliminary injunctive stays of claims against non-debtors.

These cases alone make clear that Appellees are plainly incorrect in their extravagant assertion that "[e]very court to address the issue in the wake of the Supreme Court's ruling has concluded that *Harrington* does not implicate, let alone eliminate, a bankruptcy court's statutory authority to issue Section 105(a) temporary injunctions."  Purdue Br. at 32 (underlining in

7

original).  Although *Harrington* clearly does not eliminate all injunctions in every circumstance, it clearly does eliminate them in the circumstances to which the reasoning in *Harrington* applies— injunctions to protect non-debtors from claims by other non-debtors in circumstances in which the Supreme Court has already held there is no textual support in the Bankrutpcy Code.

Under basic principles of *stare decisis*, *Harrington* would control over two Second Circuit decisions from the 1980s (and 2008 nonprecedential summary order) that debtors call "decades" of Second Circuit precedent, *see* Purdue Br. at 28, 34, if that precedent in fact it supported Appellees.  Under the well-established law of this Circuit that the Court of Appeals and this Court have repeated scores of times, when the Supreme Court, in an intervening decision, applies *reasoning* that "casts doubt" on controlling Second Circuit precedent, this Court—like the Court of Appeals—is bound to follow the Supreme Court's "*ratio decidendi*" or reasoning—not merely its holding.  *See e.g., United States v. Afriyie*, 27 F.4th 161, 168 (2d Cir. 2022) (Pooler, J.), *cert. denied,* 143 S. Ct. 326 (2022); *Wojchowski v. Daines*, 498 F.3d 99, 106 (2d Cir. 2007) (Cabranes, J.) ("We agree with the District Court that our holding in *Robbins* was based on an interpretation of the Social Security Act's anti-attachment provision that is inconsistent with the Supreme Court's reading of § 407(a) in *Keffeler.*"); *Loyal Tire & Auto Ctr., Inc. v. Town of Woodbury*, 445 F.3d 136, 145 (2d Cir. 2006) (Sotomayor, J.); *European Community v. RJR Nabisco, Inc.*, 424 F.3d 175, 179 (2d Cir. 2005) (Sotomayor, J.) *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 169 (S.D.N.Y. 2011) (McMahon, J.) ("A change in controlling law can provide a basis for decertification."  The Second Circuit has repeatedly instructed that the intervening Supreme Court decision "need not address the precise issue already decided by our Court."  *See, e.g., Needletrades, Indus. and Textile Employees, AFL-CIO, CLC v. U.S. I.N.S.*, 336 F.3d 200, 210 (2d Cir. 2003) (Meskill, J.).  Rather, as Judge Jacobs has put it more recently, "[t]o qualify as an intervening decision, the Supreme

Court's conclusion in a particular case must have broken the link on which [the Second Circuit] premised its prior decision, or undermined an assumption of that decision." *SEC v. Rio Tinto plc*, 41 F.4th 47, 53 (2d Cir. 2022). As Justice Cardozo put it, a Supreme Court opinion contains "radiating potencies" that "go beyond the actual holding" in the individual case. *Hawks v. Hamill*, 288 U.S. 52, 58 (1933) (Cardozo, J.). In short, if there were "decades of precedent" supporting Appelleees, *Harrington*'s plainly applicable reasoning would still control.

But the Second Circuit law that Appellees simply ignore makes clear that Appellees are just wrong when they claim that "decades" of holdings support them here. Debtors "decades" of Second Circuit rulings authorizing preliminary injunctions under section 105(a) appear to include only *In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 348 (2d Cir. 1985), *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 93 (2d Cir. 1988) (section 105(a) provides "[a]dditional authority" to enjoin lawsuits "that might impede the reorganization process"), and the Second Circuit's unpublished an nonprecedential summary order in *In re Bernard L. Madoff Inv. Secs., LLC*, 512 F. App'x 18, 20 (2d Cir. 2013). Apart from the fact that *Baldwin-United* has been limited by later rulings like *Wyly*, *infra*, that Appellees do not invalidates a district court injunction that stayed a debtor from asking for relief in an earlier-filed bankruptcy in the Southern District of Ohio. The Second Circuit's statement about the hypothetical powers of a bankruptcy court in another circuit is pure dicta. Likewise, *MacArthur* merely mentions preliminary relief in the context of providing now-unavailable permanent injunctive relief to non-debtors. And the Second Circuit's decision to dispose of the cited episode of the *Madoff* bankruptcy by summary order, demonstrates that the Court of Appeals felt it should not serve as precedent. In short, the debtors' supposed decades of decisions simply do not support them.

9

Appellees' citations to cases under the All Writs and Anti-Injunction Acts are likewise unhelpful to them. *Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & Pacific Railway Co.*, 294 U.S. 648, 675-77 (1935), involved an injunction against the foreclosure of real property pledged as collateral to certain bonds issued by a debtor in default. *In re Bush Terminal Co.,* 78 F.2d 662, 665 (2d Cir. 1935)*,* reversed an injunction enjoining a shareholder meeting because it would create "confusion" that interfered with the bankruptcy. *Id.*. In doing so, the Second Circuit stated that the power to grant an injunction is "is extraordinary and should be exercised only where the harm, likely to flow from the stockholders' action, is more real than here, and disproportionate to the good obtainable." *Id.* The Second Circuit's 1935 decision therefore provides zero support to the debtors. Finally, in *In re Chanticleer Assocs., Ltd.*, 592 F.2d 70, 74 (2d Cir. 1979) although the Second Circuit stated that a district court could have renewed an expired injunction that enjoined a Texas mortgage foreclosure, the Court reversed the injunction because it had been granted *ex parte* without notice to the party enjoined. The case is nothing like the present one.

Instead, in other cases that debtors fail to cite, the Second Circuit has been clear that neither general equitable jurisdiction nor the combined All Writs and Anti-Injunction Acts ("Acts") permit a preliminary injunction of parallel litigation, especially when the law provides no analogous permanent relief. In fact, the Second Circuit held that an injunction under these statutes was warranted only *after* a sufficiently final decisions in *Wyly v. Weiss*, 697 F.3d 131, 137-45 (2d Cir. 2012), a case that Appellees do not cite. There, the Second Circuit held that the All Writs Act and Anti-Injunction Act would not authorize to protect federal jurisdiction a district court injunction of pending parallel state court proceedings in the absence of a district court ruling that issued a judgment sufficient to preclude further litigation. *Id.* at 137-45 (2d Cir. 2012). It upheld the

injunction only because it was necessary to protect the collateral estoppel effect of the district court's final ruling on a particular issue. *See id.* at 143-45.

Likewise, in another inconsistent All Writs and Anti-Injunction Acts case that Appellees similarly do not mention, the Second Circuit, reversing a district court "temporary injunction" staying state court litigation state court parallel to a pending federal multi-district securities class action in this Court:

> Such a rule [that enabled a district court to postpone a related state court trial to permit pending settlement or trial in the district] would in effect create an additional exception to the Anti–Injunction Act for circumstances where a federal court finds it *convenient* to enjoin related state proceedings—an approach contrary to the Supreme Court's direction that we construe doubts about the permissibility of an injunction 'in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy.' *Atl. Coast Line R.R.,* 398 U.S. at 297, 90 S.Ct. 1739 . . . .
>
> Nor does the statutory language contain an exception for injunctions of limited duration.

*Retirement Sys. of Ala v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 430-31 (2d Cir. 2004) (quoting *Atl. Coast Line R.R.,* 398 U.S. 281, 297 (1970)). Contrary to debtors assertsion, "decades of precedent" from the Second Circuit cut against further extension of the preliminary injunction.

With insufficient legal arguments to override *Harrington*'s rejection of the same arguments they have previously made, Appellees resort to mischaracterizations of the State of Maryland's motives. Let it be clear: Maryland does not seek to race to the state courthouse to recover the Sacklers assets at the expense of either victims or other states. What we seek, however, is to prevent the much greater tragedy where wrongdoers like the Sacklers, shielded by manifestly inappropriate preliminary injunctive relief, escape justice by achieving an equally inappropriate settlement by abusing the bankruptcy code to prevent the enforcement, by states, of their own laws that protect the public health and safety. The imposition of an interminable delay of justice amid

11

a public health crisis created by misconduct leaves creditors, members of the public, and communities unprotected. As the Supreme Court seems to have clearly recognized in *Harrington*, the rulings of the bankruptcy court have resulted in the Sacklers, sheltered by preliminary and the prospect of nonconsensual permanent relief, have provided an opportunity for the Sacklers to pay less than justice requires and to escape the determination of liability and accountability that will deter future wrongdoing. 144 S. Ct. at 2077-82. Appellees' claims that it is creditors (including governments acting to protect their citizens) who will harm one another are absurd, offensive, and are perhaps one of the clearest signs that something is wrong.

Nevertheless, should any of Appellee's or the Sacklers' *creditors* prove the villain (although that seems particularly far-fetched), this Court and other courts have ample tools that may be employed to prevent any inequity when it arises. The draining of the Sacklers resources for other creditors that Appellees and their supporters assert will occur without a preliminary injunction—a concern that the Supreme Court made clear is not relieved by the bankruptcy code and should be reserved to Congress—would as presented likely result in a Sackler bankruptcy, in which the Sacklers and their trusts and affiliates, would no longer be nondebtors and would no longer be able to shield their assets. *See Harrington*, 144 S. Ct. at 2077-20782. Even without a Sackler bankruptcy, however, it seems unlikely that courts of competent jurisdiction will be unable to use other powers—short of a stay of all government unit civil law enforcement—to protect creditors from the disaster that Purdue self-and-Sackler-servingly foresees. Tomorrow's problems, if they arise, can be resolved tomorrow.

As set forth above, in Maryland's opening briefs, and in the papers it has filed below, the bankruptcy court erred in failing to recognize that *Harrington* bars the further extension of the preliminary injunction. Pre-*Harrington* Second Circuit, the All Writs and Anti-Injunction Acts,

and, and the plain text of the Bankruptcy Code likewise required such a holding.

## CONCLUSION

For the foregoing reasons and the reasons stated in Maryland's initial brief, the bankruptcy court's extension orders should be reversed and the preliminary injunction should be vacated.

Dated: November 11, 2024

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/Brian T. Edmunds
BRIAN T. EDMUNDS
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place
Baltimore, Maryland 21202
Tel.: (410) 576-6578
Fax: (410) 576-6656
bedmunds@oag.state.md.us

*Attorneys for the State of Maryland*