UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11 26 2024

In re:

PURDUE PHARMA L.P., *et al.,*

Debtors.[1]

———————————————————————— x

STATE OF MARYLAND,

Appellant,

vs.

PURDUE PHARMA L.P., *et al.*,

Appellees.[2]

———————————————————————— x

Chapter 11

Case No. 19-23649 (SHL)

(Jointly Administered)

Adv. Pro. No. 19-08289

Case No. 24-Civ-7042

## MEMORANDUM DECISION AND ORDER AFFIRMING VARIOUS ORDERS OF THE BANKRUPTCY COURT THAT EXTENDED A PRELIMINARY INJUNCTION

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Purdue Products L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick and L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Appellees in this case are the Debtors and the Official Committee of Unsecured Creditors of Purdue Pharma L.P., *et al.*

McMahon, J.:

This appeal is taken from three order that extended a preliminary injunction issued during the adversary proceeding *Purdue Pharma, L.P., et al. v. Commonwealth of Massachusetts, et al.*, Adv. Pro. No. 19-08289 (the "Adversary Proceeding"), filed in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") (Lane, U.S.B.J.).[3] Appellant, the State of Maryland, asks this Court to vacate the Bankruptcy Court's grant of the Thirty-Seventh Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction, dated September 6, 2024, Adv. Dkt. No. 533 ("September 6, 2024 Extension Order"), the Thirty-Eighth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction, dated September 27, 2024, Adv. Dkt. No. 557 ("September 27, 2024 Extension Order"), and the Thirty-Ninth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction dated November 1, 2024, Adv. Dkt. No. 583 ("November 1, 2024 Extension Order"). Since the oral argument of this appeal, the Debtors have moved for a further extension. Adv. Dkt. No. 590. The Court is advised that Maryland will be filing a notice of appeal if that extension is granted at a hearing being held before Judge Lane today. *See* Dkt. No. 59. Maryland asserts that same ground for overturning each of the extension orders.

The Court assumes familiarity with the facts and extensive procedural history of the case. *See In re Purdue Pharm. L.P.*, 619 B.R. 38 (S.D.N.Y. 2020); *In re Purdue Pharma, L.P.*, 635 B.R. 26 (S.D.N.Y. 2021), *rev'd and remanded sub nom. In Re Purdue Pharma L.P.*, 69 F.4th 45 (2d Cir. 2023), *rev'd and remanded sub nom. Harrington v. Purdue Pharma L. P.*, 144 S. Ct. 2071 (2024).

---

[3]    On July 1, 2022, the Adversary Proceeding was reassigned from Judge Robert D. Drain (Ret.) to Judge Sean H. Lane. Adv. Dkt. No. 360.

The preliminary injunction in question (the "Preliminary Injunction") was entered shortly after the Debtors identified in footnote 1 (collectively referred to as "Purdue") filed petitions in bankruptcy. It enjoins all governmental and private plaintiffs from continuing or commencing any judicial, administrative, or other actions, against the Debtors—Purdue Pharma L.P., certain affiliated debtors, as debtors or debtors in possession—as well as certain non-debtors,[4] including former or current owners, directors, officers, and other entities associated with Purdue Pharma L.P. (each a "Related Party"; together, the "Related Parties"). *See* Second Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction, dated November 6, 2019, Adv. Dkt. No. 105 ("November 6, 2019 Order"). Of specific interest, the injunction extends to those members of the Sackler Family who at all relevant times owned and controlled Purdue, as well as entities (such as trusts) of which the Sackler Family members are owners or beneficiaries.

This injunction is considerably broader than the automatic stay that is imposed on most (but not all) litigation against a bankrupt (and only against a bankrupt) pursuant to 11 U.S.C.

---

[4]   The Related Parties are: The Purdue Frederick Company Inc.; The P.F. Laboratories Inc.; Purdue Pharma Technologies Inc.; PLP Associates Holdings L.P.; PLP Associates Holdings Inc.; BR Holdings Associates L.P.; BR Holdings Associates Inc.; Rosebay Medical Company L.P.; Rosebay Medical Company, Inc.; Beacon Company; PRA Holdings Inc.; Pharmaceutical Research Associates Inc.; Purdue Holdings L.P.; Rhodes Pharmaceuticals Inc.; Rhodes Technologies Inc.; Coventry Technologies L.P.; MNP Consulting Limited; Richard S. Sackler; the Estate of Jonathan D. Sackler; Jonathan D. Sackler; Mortimer D.A. Sackler; Kathe A. Sackler; Ilene Sackler Lefcourt; the Estate of Beverly Sackler; Beverly Sackler; Theresa Sackler; David A. Sackler; Marianna Sackler; Estate of Mortimer Sackler; Estate of Raymond Sackler; Trust for the Benefit of Members of the Raymond Sackler Family; Raymond Sackler Trust; Beverly Sackler, Richard S. Sackler, and Jonathan D. Sackler, as Trustees Under Trust Agreement Dated November 5, 1964; Beverly Sackler, Richard S. Sackler, and Jonathan D. Sackler, as Trustees Under Trust Agreement Dated November 5, 1974; Paulo Costa; Cecil Pickett; Ralph Snyderman; Judith Lewent; Craig Landau; Mark Timney; Stuart D. Baker; Frank Peter Boer; John Stewart; Russell Gasdia; Marv Kelly; Shelli Liston; Heather Weaver; Doug Powers; Lori Fuller; Rodney Davis; Brandon Worley; Donald Leathers; Wendy Kay; Michael Madden; LeAvis Sullivan; Jeffrey Ward; Beth Taylor; Leigh Varnadore; Paul Kitchin; Mark Waldrop; Mark Radcliffe; Mark Ross; Patty Carnes; Carol Debord; Jeff Waugh; Shane Cook; James David Haddox; Aida Maxsam; Tessa Rios; Amy K. Thompson; Joe Coggins; Lyndsie Fowler; Mitchell "Chip" Fisher; Rebecca Sterling; Vanessa Weatherspoon; Chris Hargrave; Brandon Hassenfuss; Joe Read; Andrew T. Stokes; Nathan C. Grace; Jaclyn P. Gatling; Leslie Roberson; Barbara C. Miller; Briann Parson-Barnes; Becca Beck Harville; Lindsey Bonifacio; Tammy Heyward; James Speed; Damon Storhoff; Diana C. Muller; and Draupadi Daley.

§ 362(b)(4). The Bankruptcy Court issued the Preliminary Injunction pursuant to 11 U.S.C.

§ 105(a) and Fed. R. Bankr. P. 7065, to enjoin what the automatic stay could not: (1) governmental

actions to enforce regulatory or police powers, and (2) actions against the Related Parties that

might have an impact on the *res* of the bankruptcy estate. The Sacklers (some of whom had been

officers or directors of Purdue) had a variety of claims, including claims for indemnification and

contribution, against Purdue's estate, while Purdue had considerable claims against the Sacklers.[5]

The Preliminary Injunction was entered for the express purpose of giving the Debtors time

to come up with a plan of reorganization. The Bankruptcy Court recognized that "there should be

a serious effort undertaken with appropriate safeguards to enable the Debtors and their creditors

as a whole to try to resolve the allocation issues in this case." *See* Transcript of Hearing held on

November 8, 2019, Adv. Dkt. No. 108, at 256. In order to accomplish that goal, it was deemed

necessary to halt litigation both by and against the Sacklers.

Appellant, the State of Maryland, was among the Ad Hoc Group of Non-Consenting States

that elected to "voluntarily consent fully to abide by the terms of the Order." Adv. Dkt. No. 105,

at 5, n. 3. Accordingly, Maryland suspended an administrative proceeding that it had commenced

in May 2019, against Purdue and certain Related Parties, in which it had alleged the commission

of unfair and deceptive trade practices. *See In re Purdue Pharma, et al.* (Md. Consumer Prot. Div.

filed May 16, 2019).

The Preliminary Injunction and the Bankruptcy Court's first extension order were affirmed

on appeal, *In re Purdue Pharm. L.P.*, 619 B.R. 38 (S.D.N.Y. 2020), and further extended in

increments over five years. But to say that the injunction has been in effect five years is not quite

---

[5]   I use the Sackler name loosely to refer to any member of the family or any entity associated with the family against whom or which a claim—including a claim for fraudulent conveyance—might exist.

fair. For most of that time, it was in effect while litigation over the original plan of reorganization was pending.

On September 9, 2021, the Debtors submitted the Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors ("the 2021 Plan of Reorganization"). As part of Plan all claims that could be brought against the Related Parties relating to their affiliation with Purdue were discharged, without the consent of all affected claimants and over the objection of some. *See* Bankr. Dkt. No. 3726. The Bankruptcy Court issued an order confirming the 2021 Plan of Reorganization, Bankr. Dkt. No. 3786.

Between September 2021 and June 2024, the Preliminary Injunction remained in effect while a series of appeals ensued. The Bankruptcy Court's order confirming the 2021 Plan of Reorganization was overturned by this Court, *In re Purdue Pharma, L.P.*, 635 B.R. 26 (S.D.N.Y. 2021), reinstated by the Second Circuit, *In Re Purdue Pharma L.P.*, 69 F.4th 45 (2d Cir. 2023), and ultimately overturned by the United States Supreme Court, *Harrington v. Purdue Pharma L. P.*, 144 S. Ct. 2071 (2024). The Supreme Court, like this Court, held that the Bankruptcy Code "does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a non-debtor without the consent of affected claimants." *Harrington*, 144 S. Ct. at 2088. No one objected to the extension of the injunction while the appellate process played itself out. That this took almost three years is not the fault of any of the parties to the bankruptcy proceeding.

When the Supreme Court handed down its decision on June 27, 2024 (just five months ago), the parties effectively found themselves back where they had begun almost five years earlier—hoping to craft a Plan of Reorganization that would be acceptable to the vast majority of interested parties. This included the Sacklers, who had taken some eleven billion dollars out of

Purdue prior to the bankruptcy filings, and whose position had theretofore been that they would only put money back into Purdue's bankruptcy estate if they obtained "total peace"—meaning that they would, as part of the Plan of Reorganization, receive releases of all claims from all affected claimants, with or without the consent of those claimants. That, obviously, was no longer possible, in light of *Harrington*.

Nonetheless, the parties began discussions anew, in the hope that they could craft an entirely new Plan of Reorganization in which the Sacklers would participate despite the fact that it did not include non-consensual release of third-party claims against them. In aid of that effort at reorganization, the Bankruptcy Court ordered a thirty-fourth, Adv. Dkt. No. 506, thirty-fifth, Adv. Dkt. No. 533, thirty-sixth, Adv. Dkt. No 565, and thirty-seventh, Adv. Dkt. No. 583 extension of the November 6, 2019 Order. Negotiations are ongoing under the watchful eye of Bankruptcy Judge Sean Lane and two experienced mediators (Judge Shelley Chapman (Ret.) and Professor Eric Green). While no final deal has been reached, the parties are making progress. On November 12, 2024, the mediators filed an interim status report with the Bankruptcy Court, indicating that:

> certain agreements in principle have been reached between and among [(i)-(ii) all but one of the Sackler family groups]; (iii) the Debtors; (iv) the Creditors' Committee; (v) the Ad Hoc Committee; (vi) the MSGE Group; and (vii) the State Attorneys General negotiating committee (which presently has 15 members) with respect to (a) the total amount of cash consideration to be provided by the settling Covered Parties; (b) a schedule for the payment of such amount by the settling Covered Parties; and (c) certain non-monetary terms, including terms relating to (i) the means of implementation of any settlement; (ii) the scope and nature of the releases; and (iii) the resolution of various, but not all, intercreditor issues.

Bankr. Dkt. No. 6917.

As of the thirty-fifth extension, the September 6, 2024 Extension Order, Maryland no longer consented to be voluntarily bound by the Order and submitted a limited objection to the Debtors' motion to extend the Preliminary Injunction. Adv. Dkt. No. 522. Appellant argues that the *ratio decidendi* of *Harrington* precludes Section 105(a) preliminary injunctions against non-

debtor parties because, with non-consensual releases no longer available to non-debtors, there can be no permanent injunction against such litigation. In the alternative, Appellant argues that the Debtors do not satisfy the traditional standard for a preliminary injunction.

Almost all other parties to the mediation—including the other 49 states and the Official Committee of Unsecured Creditors of Purdue Pharma L.P., *et al.*—either oppose or do not support the reversal of the Bankruptcy Court's orders. Although Maryland is now a non-consenting party, it is nonetheless involuntarily bound by the injunction, so it has undoubted standing to take this appeal. *See* Adv. Dkt. No. 557, at 13, n. 4.

Appellant timely amended its original notice of appeal to include the September 27, 2024 Extension Order and the November 1, 2024 Extension Order.

For the reasons set forth below, the Bankruptcy Court's Orders extending the Preliminary Injunction are AFFIRMED.

## THE BANKRUPTCY COURT'S ORDERS ON APPEAL

### I.     The September 6, 2024 Extension Order

On August 23, 2024, the Debtors moved for, Adv. Dkt. No. 512, and were granted, Adv. Dkt. No 533, an 18-day extension of, *inter alia*, the Preliminary Injunction.

The Bankruptcy Court determined that "while the Supreme Court's recent decision [in *Harrington*] precludes the consummation of a plan of reorganization that contains a nonconsensual third-party release, it does not preclude a successful reorganization in these cases." Transcript of Hearing Held on September 5, 2024, Appendix for Appellant ("A") 0813. "[T]he Supreme Court addressed the question of a nonconsensual third-party release of claims. That is a substantive resolution of somebody's claims dealing with a non-debtor. And that's different than and legally

distinct from a request to impose [an] injunction to allow a reorganization to reach an appropriate decision." A 0814. "Nothing about the Supreme Court's decision takes away, erodes, or even addresses" the Bankruptcy Court's authority to enter a preliminary injunction enjoining litigation against related non-debtor third parties. *Id.*

Next, the Bankruptcy Court weighed the four factors to be considered in granting a preliminary injunction: the likelihood of success on the merits; the possibility of irreparable harm to the Debtors' estate in the absence of the requested injunctive relief; the balance of the equities; and whether the injunction is in the public interest. A 0813. The Bankruptcy Court clarified that the first factor requires consideration of "the prospect of a successful reorganization that might come out of a mediation and whether the Debtors are substantially more likely to reorganize with the injunction in place." *Id.* (citing *In re Lyondell Chem. Co.*, 402 B.R. 571, 589-90 (Bankr. S.D.N.Y. 2009)). The Bankruptcy Court determined that all four factors weighed in favor of an extension of the Preliminary Injunction, citing principally the broad support of the interested parties for the Preliminary Injunction. A 0814-15.

## II.    The September 27, 2024 Extension Order

On September 13, 2024, the Debtors moved for, Adv. Dkt. 536, and were granted, Adv. Dkt. 557, a 35-day extension of, *inter alia,* the Preliminary Injunction.

The Bankruptcy Court "incorporate[d] its prior rulings" but was "mindful…that the record continues to evolve…[and to make]  note of that as appropriate." Transcript of Hearing Held on September 23, 2024, A 1194. Accordingly, the Bankruptcy Court revisited the four-factor standard preliminary injunction standard. A 1194-95. The Bankruptcy Court again observed the support of "key stakeholders" and the "value-destructive litigation that prevailed prepetition would almost certainly resume" and harm the estate. A 1195. The Bankruptcy Court noted that while the contents

of the negotiations were confidential, the mediators and key constituent groups had stressed that

progress was being made and that the Preliminary Injunction was key to facilitating that progress.

A 1194-97.

### III.    The November 1, 2024 Extension Order

On October 21, 2024, the Debtors moved for, Adv. Dkt. No. 569, and were granted, Adv.

Dkt. No. 583, a second 35-day extension of, *inter alia*, the Preliminary Injunction.

Again, the Bankruptcy Court "incorporate[d] by reference its prior rulings." Transcript of

Hearing Held on October 31, 2024, Supplemental Appendix for Appellee Purdue Pharma L.P.

("SA") 6572. The Bankruptcy Court "recognize[d] that the facts and legal landscape remained

largely unchanged from the…prior hearings, the fact reflected by the markedly similar set of

papers submitted by the objectors." SA 6573. The Bankruptcy Court reviewed "the additional

facts on the record," noting that "there's been…substantial progress made in the mediation." *Id.*

The Bankruptcy Court also noted that "no party appears to dispute and indeed many parties

expressly stated their view that a mediated solution here would be the best results for all parties,

including most notably the individual victims, and that may be true on the substance of what the

resolution would be but also crucially in terms of time for obtaining such a resolution." SA 6574.

## ISSUES ON APPEAL

1. Did the Supreme Court's decision in *Harrington* divest the Bankruptcy Court of the power
   to enter a temporary injunction enjoining litigation against non-debtor third-parties?

2. Did the Bankruptcy Court err in concluding that the factors for continuation of a
   preliminary injunction were satisfied?

## DISCUSSION

### I.    Standard of Review

Districts courts have jurisdiction to hear appeals from "final judgments, orders, and decrees

... [and] with leave of the court, from other interlocutory orders and decrees ... of bankruptcy

judges." 28 U.S.C. § 158(a). On an appeal from the Bankruptcy Court, this court reviews

conclusions of law *de novo, see Elliot v. Gen. Motors LLC (In re Motors Liquidation Co.)*, 829

F.3d 135, 152 (2d Cir. 2016) (citing *In re Petrie Retail, Inc.*, 304 F.3d 223, 228 (2d Cir. 2002)),

while scrutinizing findings of fact for clear error, *In re Republic Airways Holdings Inc.*, 582 B.R.

278, 281 (S.D.N.Y. 2018) (citing *In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir.

2000)). A finding of fact is clearly erroneous only if this Court is "left with the definite and firm

conviction that a mistake has been committed." *Adler v. Lehman Bros. Holdings Inc. (In re Lehman*

*Bros. 3 Holdings Inc.)*, 855 F.3d 459, 469 (2d Cir. 2017). Mixed questions of law and fact are

generally subject to *de novo* review, although the standard applied "depends...on whether

answering it entails primarily legal or factual work." *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset*

*Mgmt. LLC v. Vill. at Lakeridge*, LLC, 583 U.S. 387, 398 (2018). A bankruptcy court's

determination of its subject matter jurisdiction is a conclusion of law subject to *de novo* review.

*Elliot*, 829 F.3d at 152.

I review the Bankruptcy Court's decision to grant a preliminary injunction for abuse of

discretion. *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 206 (2d Cir. 2014). A court

"abuses—'or more precisely, exceeds'—its discretion when its decision rests on an 'error of law'

or a 'clearly erroneous factual finding,' or 'cannot be located within the range of permissible

decisions.'" *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 666 (2d Cir. 2023) (quoting *Zervos v. Verizon*

*New York, Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)).

## II.  *Harrington* **Did Not Divest the Bankruptcy Court of the Power to Temporarily Enjoin Non-debtor Third-party Litigation**

This Court affirmed the Preliminary Injunction—along with the Bankruptcy Court's first extension order—on August 11, 2020. *In re Purdue Pharm. L.P.*, 619 B.R. 38 (S.D.N.Y. 2020). The Court's reasoning was as follows: A bankruptcy court has "related to" jurisdiction over every case where "the action's outcome might have any conceivable effect on the bankruptcy estate." *SPV Osus Ltd. v. UBS AG,* 882 F.3d 333, 339-40 (2d Cir. 2018). This construction of "related to" jurisdiction, which offers broad protection to both debtors and third parties, is consistent with Section 105(a) of the Bankruptcy Code, which gives bankruptcy courts the power to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Code]." 11 U.S.C. § 105. The legislative history provides that Section 105 "is similar in effect to the All Writs Statute," H.R. Rep. 595, 95th Cong., 1st Sess. at 216-17 (1977), which gives "all courts established by Act of Congress" the power to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law," 28 U.S.C. § 1651(a); *see also Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & Pacific Railway Co.,* 294 U.S. 648, 675 (1935) ("The power to issue an injunction when necessary to prevent the defeat or impairment of its jurisdiction is [] inherent in a court of bankruptcy, as it is in a duly established court of equity. [The All Writs Act]…recognizes and declares the principle."). The Second Circuit has likewise affirmed Section 105(a) preliminary injunctions against non-debtor third-party litigation as "related to" the Bankruptcy Court's exercise of the *res* of the estate. *See In re Bernard L. Madoff Inv. Sec.*, LLC, 512 F. App'x 18, 20 (2d Cir. 2013).

Appellant does not dispute that, prior to *Harrington,* the Bankruptcy Court had jurisdiction to issue the Preliminary Injunction. However, Appellant argues that *Harrington* "may require

reconsideration of this Court's 'related to' subject-matter jurisdiction over claims against [the Related Parties]." Appellant's Br. at 2.[6] I do not agree.

In *Harrington*, the Supreme Court rejected the argument that 11 U.S.C. § 1123(b) allows a bankruptcy court, as part of a plan of reorganization, to release and enjoin claims against a non-debtor without the consent of the claimants. 144 S. Ct. at 2081-83 (citations omitted). In a footnote, the Supreme Court specifically rejected the argument that Section 105(a) permits such relief: "As the Second Circuit recognized, however, '[Section] 105(a) alone cannot justify' the imposition of nonconsensual third-party releases because it serves only to 'carry out' authorities expressly conferred elsewhere in the code." *Id.* at 2082 n.2 (citing *In re Purdue Pharma L.P.*, 69 F.4th 45, 73 (2d Cir. 2023); 2 R. Levin & H. Sommer, COLLIER ON BANKRUPTCY ¶105.01[1], p. 105–6 (16th ed. 2023)).

Appellant argues that "[i]f the Bankruptcy Code…offers no permanent injunctive relief to non-debtors …, [S]ection 105(a)'s grant of limited authority to issue orders 'necessary or appropriate to carry out the provisions of this title' cannot be read to afford the same relief on a preliminary basis." Appellant's Br. at 10 (citing 11 U.S.C. § 105(a)).

This is simply not so.

First of all, the Supreme Court emphasized that its holding in *Harrington* was a narrow one. It held that, "because this case involves *only a stayed reorganization plan*, … we hold *only* that the [B]ankruptcy [C]ode does not authorize a release and injunction, that *as part of a plan of reorganization under Chapter 11,* effectively seeks to discharge claims against a nondebtor without the consent of affected claimants." *Harrington*, 144 S. Ct. at 2087 (emphasis added). Here,

---

[6] Having made this statement in its brief on appeal, Maryland did not follow through and argue that "related to" subject matter jurisdiction is lacking. But a court must always satisfy itself that it has subject matter jurisdiction over any case on its docket. I cannot, therefore, skip over this issue.

the Related Parties are not seeking a permanent release of claims against them; the Related Parties and others (notably Purdue itself, the Official Committee of Unsecured Creditors, and numerous governmental entities, including all 49 States other than Maryland) are seeking to temporarily enjoin potential actions against the Related Parties so that they can negotiate a viable plan or reorganization, one that would include a *consensual* resolution (and only a consensual resolution) of claims against certain non-debtors (notably, the Sacklers). The Supreme Court was careful to exclude such consensual arrangements from its holding in *Harrington. Id.* at 2087 ("Nothing in what we have said should be construed to call into question *consensual* third-party releases offered in connection with a bankruptcy reorganization plan[.]"); *see also Shalala v. Ill. Council on Long Term Care, Inc.,* 529 U.S. 1, 18 (2000) (holding that the Supreme Court "does not normally overturn, or so dramatically limit, earlier authority *sub silentio*.").

Other courts have similarly distinguished *Harrington* when deciding motions for preliminary injunction in the bankruptcy context. *See e.g. In re Coast to Coast Leasing, LLC,* 661 B.R. 621, 623-24 (Bankr. N.D. Ill. 2024) ("Here, the guarantors are not seeking a release of claims against them, unlike in *Purdue Pharma*."); *In re Parlement Techs., Inc.*, 661 B.R. 722, 724 (Bankr. D. Del. 2024) ("[A] preliminary injunction may still be granted if the Court…believes that the parties may ultimately be able to negotiate a plan that includes a consensual resolution of the claims against non-debtors."); *In re Diocese of Buffalo, N.Y.,* 663 B.R. 197, 200 (Bankr. W.D.N.Y.) ("Nothing in [*Harrington*] expressly prohibits a temporary stay of litigation against [non-debtor] parishes and affiliates."); *In re Onyx Site Servs., LLC,* 2024 WL 4132150, at *2 (Bankr. M.D. Fla. Aug. 22, 2024) (granting Section 105(a) injunction of claims against non-debtor principal of the debtor).

In sum, *Harrington* has clarified *only* that the Debtors' plan of reorganization may *not* contain the *non-consensual* release of claims against non-debtor third parties. But *Harrington* otherwise left unchanged the Bankruptcy Court's power. Nothing in the limited *ratio decidendi* in *Harrington* so much as discusses, let alone reverses, the power of a bankruptcy court, in appropriate circumstances, to temporarily enjoin litigation, not only against debtors, but against third parties who, by virtue of their relationship to debtors, may have assets or claims that could impact the *res* of the bankruptcy estate. In this Circuit, such an injunction would fall within the "related to" jurisdiction of the Bankruptcy Court, which is about as broad as it can possibly be. It encompasses any action whose "outcome might have any conceivable effect on the bankrupt estate." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 340 (2d Cir. 2018) (internal citation omitted). It can hardly be doubted that litigation against the Sacklers touches on the *res* of Purdue's bankruptcy estate; members of the family can assert broad claims for indemnification and contribution against the company, while the company has billions of dollars in claims for, *inter alia*, fraudulent conveyance against the Sacklers—which, if settled (as the parties are presently attempting to do), would substantially inflate the value of the estate.

Has the time come to reconsider whether this Circuit should afford that jurisdiction such liberal parameters? Perhaps. But that is a question to be taken up in the first instance by the Second Circuit. As nothing in *Harrington* or in its reasoning addresses the power of a bankruptcy court to stay, *temporarily*,[7] litigation that might adversely impact the size or scope of the bankruptcy estate,

---

[7] It is quite possible that the problem here lies in referring to the Section 105(a) injunction as "preliminary." It is plainly not preliminary to any final order that would force a claimant who is now stayed from pursuing a claim to release that claim non-consensually. It is, rather, "temporary"—it is intended to remain in force, and so to postpone litigation against the Sacklers, only until such time as either the parties present the Bankruptcy Court with a plan for confirmation, or it becomes clear that it is not possible to devise such a plan. In either event, any non-consenting party will at that point be free to pursue whatever litigation it wishes to bring against the Sacklers. And if the present negotiations result in the presentation of a plan, I very much doubt whether Maryland, alone among the states, will remain among those non-consenting parties.

Judge Lane and I remain bound by *SPV Opus,* and we have "related to" jurisdiction to enjoin temporarily any litigation that touches on the *res* of the estate.

### III.    The Bankruptcy Court Did Not Abuse its Discretion by Continuing to Extend the Preliminary Injunction

While the Second Circuit has never explicitly established the standard for reviewing a preliminary injunction issued under Section 105 of the Bankruptcy Code, various have resolved the issue by evaluating the traditional four factors for injunctive, as applied specifically to a bankruptcy: (1) whether there is a likelihood of successful reorganization, *id.*; (2), whether there is either imminent irreparable harm to the estate in the absence of an injunction, or "the action to be enjoined is one that threatens the reorganization process," *Alert Holdings, Inc. v. Interstate Protective Servs., Inc.*, 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992); (3) the balance of "the comparative harm[s] to the debtor, and to [the] debtor's reorganization, against that to the would-be-enjoined party should an injunction be issued," *Hawaii Structural Ironworkers Pension Tr. Fund v. Calpine Corp.*, 2006 WL 3755175, at *4 (S.D.N.Y. Dec. 20, 2006); and (4) whether the public interest weighs in favor of an injunction, *see, e.g., Lyondell*, 402 B.R. at 588. I consider these in turn.

#### a.    Likelihood of Successful Reorganization

Appellees argue that they are ever closer to reorganization. While the contents of the mediation are confidential, Appellees argue that they "have made continued and material progress" in the mediation and point to the fact that so many parties to the Adversary Proceeding, including Judge Shelley Chapman (Ret.) and Professor Eric Green, support the extension requests. Appellee's Resp. at 35-36. On these grounds, Appellees argues that this factor supports a continuation of the Preliminary Injunction.

Appellant does not dispute this. Rather, Appellant's argument is that the Preliminary Injunction does not *increase* the likelihood of a successful reorganization. Appellant's Br. at 15 (citing *Radiation Oncology, LLC v. Queen's Med. Ctr.,* 810 F.3d 631, 636 (9th Cir. 2015) and *Devose v. Herrington,* 42 F.3d 470, 471 (8th Cir. 1994)).

Judge Lane considered both metrics, A 0813, and, frankly, both metrics yield the same result. The appointed mediators and most of the major stakeholders are confident that a successful reorganization plan is imminent. They are also confident that the Preliminary Injunction is—and continues to be—instrumental in devising a successful reorganization plan. While the Court is sensitive to Maryland's concerns, the support for a continuation of the Preliminary Injunction is overwhelming. The contents of the mediation are confidential; the Court can only gauge what it can from the reports of the parties and mediators. However, the Court takes judicial notice of the mediators' recently filed interim status report, informing the Bankruptcy Court that nearly all parties have come to an agreement in principle, Bankr. Dkt. No. 6917. *See In re Lyondell Chem. Co.,* 402 B.R. 571, 589-90 (Bankr. S.D.N.Y. 2009) (the debtors need not present "proof of the uncertain" in order to demonstrate a "reasonable likelihood of a successful reorganization."). While not a final agreement, it indicates enough progress for the Court to conclude that such an agreement is within striking distance—a remarkable feat considering that the first negotiation took well over a year and a half, while the parties have been at the renewed negotiation, under entirely different circumstances, for just five months. As such, this factor supports a continuation of the Preliminary Injunction.

### b. Imminent Irreparable Harm

Appellees argue that the onslaught of litigation to ensue once the Preliminary Injunction terminates will distract the parties to the bankruptcy proceeding from their mediation efforts and

ultimately harm the estate. Appellee's Resp. at 39. The Debtors would inevitably be dragged into lawsuits and, any successful claim for contribution or indemnification would further drain the Estates to the detriment of creditors. *Id.* at 39.

Appellant counters that this irreparable harm is entirely speculative. Appellant's Br. at 16. On the contrary, Appellant argues that "what may cause creditors' minds to stray from the settlement may help the [Related Parties] gain additional focus on the mediation." *Id.*

I am not convinced that irreparable harm in the form of a contribution or indemnification claim against Purdue is imminent. However, I defer to Judge Lane's finding, predicated on information received from the mediators, that if "the war of all-against-all" were to break out now—and apparently it would if anyone crossed the line and started a lawsuit or administrative proceeding—mediation efforts would cease. As mediation is unquestionably the most cost-effective and efficient means that the Debtors have of recovering assets with which to pay their creditors, this factor supports a continuation of the Preliminary Injunction.

### c. Balance of Harms and the Public Interest

Appellees argue that the best chance for claimants to recover significant value in the shortest amount of time is through global settlement. Appellee's Resp. at 40. If the Preliminary Injunction is lifted prior to settlement, they argue that a chaotic, inequitable "rush to the courthouse" will ensue, which would not be in the public interest.

Appellant argues that the Debtors' interest in obtaining a Chapter 11 "fresh start" is far outweighed by the need for states like itself to pursue civil, administrative, and regulatory law enforcement to protect the public health. Appellant's Br. at 16-17. Appellant notes that "this case sets a precedent for vast amounts of other cases that constitute the day-to-day work of the states" in managing the opioid crisis. *Id.* at 17.

Yet again, Appellees have the better of the argument. The public interest in securing a significant voluntary contribution from the Related Parties far outweighs Maryland's interest in advancing its administrative proceeding today.

Let us consider Appellant's interest. The only non-monetary relief that Appellant seeks in its administrative proceeding against the Sacklers is that they "cease and desist from engaging in unfair or deceptive trade practices in violation of the Consumer Protection Act." A 1721. But there is no need for a court or agency to enter an injunction or cease and desist order in order to get the Sacklers out of the opioid business. The Sacklers have not been involved with the Debtors for nearly six years and there is no meaningful prospect that they will ever again be involved in selling opioids. Indeed, that was their plan all along—take the money and run. Moreover, the Voluntary Injunction—administered under the watchful eye of the Bankruptcy Court—bars the Sacklers from "actively engag[ing] in the opioid business in the United States." Thirty-Ninth Amended Order Pursuant to 11 U.S.C § 105(a) Granting Motion for a Preliminary Injunction, dated November 1, 2024, Dkt. No. 583. So, any non-monetary relief that Appellant might order would be absolutely meaningless in advancing the interests of the citizens of Maryland.

What would be meaningful to the citizens of Maryland who have been and are being impacted by the opioid crisis is money—money to settle individual wrongful death and personal injury claims, and money to fund anti-opioid programs and addiction treatment. The best chance—perhaps the only *meaningful* chance—of obtaining that relief is a successful mediation, at the end of which the Sacklers put a substantial sum of money (which will ultimately be funneled to the severa States) back into Purdue's bankruptcy estate. If mediation fails—and there is good reason to believe mediation will fail in the absence of the Preliminary Injunction—any prospect of near-term monetary relief will recede, as the Debtors and their creditors are forced into a costly, lengthy

litigation with the Related Parties, who will assert jurisdictional defenses and who have secreted their assets abroad. *See* Transcript of Hearing Held on October 31, 2024, SA 6574. I cannot quarrel with the findings of Judge Lane, and Judge Drain before him, in that regard.

In light of the progress of mediation to date, this means the balance of the hardships and the public interest both favor leaving the injunction in place in order to facilitate the ongoing mediation.

Accordingly, the orders of the Bankruptcy Court extending the Preliminary Injunction are affirmed.

\* \* \*

The "elephant in the room" is that the Preliminary Injunction has been in effect for a very, very long time. While each of the Debtors' motions to extend the Preliminary Injunction following the Supreme Court's decision ending litigation over the nonconsensual releases has been framed as "limited" or "exceedingly modest," the cumulative effect of all thirty-nine (perhaps now forty) extensions has been to stall all litigation against the Sacklers for over five years. And while many (perhaps most) affected creditors would rather release their claims against the Sacklers in exchange for a guaranteed payment of some sort, there are opioid victims who will never consent to release their claims against the Sacklers; they have been prevented from pursuing their (perhaps quixotic) quest to hold the family accountable for half a decade.

The latest request for an extension is rather obviously calibrated to get the parties past the year-end holidays. If no agreement is reached over the holidays, there will no doubt be another "modest" request—and quite possibly another—and yet another. And I rather expect that, every single time, the parties will tell Judge Lane that they are inching ever closer to an agreement and only need a little more time.

At oral argument, I reminded the parties of the following exchange from Mel Brooks' movie *Spaceballs* (1987), which illustrates the problem facing Judge Lane and myself when we are dealing with these requested extensions:

DARK HELMET:     When will then be now?

COL. SANDUSZ:     Soon.

"Soon" is when the parties and the mediators keep telling Judge Lane an agreement can be reached.

The next line of dialogue in the movie, which I inexplicably failed to quote, is this:

DARK HELMET:     When is soon?

That is indeed the question. For "soon" is an infinitely receding target. At oral argument, I asked the parties, "When will then be now?" in an effort to figure out when "soon" might be arriving. No one could tell me. No one even hazarded a guess.

I appreciate the efforts that the parties have made in the months since the Supreme Court finally upended the expectation they had all harbored from the beginning—the expectation that the nondebtor Sacklers could, as part of Purdue's bankruptcy, obtain for themselves a blanket release of any and all claims that anyone might assert against them. And I appreciate the extraordinary complexity of the situation in which the parties find themselves; Judge Drain made that all too clear when he confirmed the now-discarded original Plan of Reorganization.

But there must be an end to this mediation process. As more and more extensions are sought, it becomes less and less convincing that the parties really are on the cusp of a deal,[8] or that the public interest would be better served by prolonging the stay, rather than by ramping up litigation against the (perhaps recalcitrant) Sacklers. In other words, "then" had better become

---

[8]   I make this observation with all deference to the mediators, for whom I have nothing but the greatest respect, and who I know would never mislead the Bankruptcy Court about their progress.

"now" pretty "soon," or the preliminary injunction factors will cease to favor further postponement of the ability of parties who have every right to sue the Sacklers to start the war of all against all.

## CONCLUSION

For the reasons set forth below, the Bankruptcy Court's Orders that are before me on appeal are AFFIRMED.

This constitutes the decision and order of the Court. It is a written opinion. The Clerk of Court is respectfully directed to close this matter on the Court's docket.

Dated: November 26, 2024

U.S.D.J.

BY ECF TO ALL COUNSEL