UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____x

In re Purdue Pharma, L.P. et al,

_____x

THIS DOCUMENT RELATES TO:

        21 Civ. 7532 (CM)
        24 Civ. 7042 (CM)
        24 Civ. 8604 (CM)

_____x

Chapter 11
Case No. 19-23649

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/19/2025

## ORDER FINALIZING MATTERS APPURTINANT TO CLOSING CASES

McMahon, J.:

Over the course of the past year, I have received a number of what I will call "submissions" from two individuals in relation to the Purdue Pharma bankruptcy – a matter in which I have handled a number of appeals from various orders of the Bankruptcy Court starting in 2019. I will not be handling the appeals from the Bankruptcy Court's latest Plan Confirmation order; those cases have been assigned to my colleague, The Hon. Nelson S. Roman. So I need to clean up my docket. That means I have to figure out what to do about these various submissions – most but not all of which have been place somewhere on a Purdue docket, only one of which has generated any response, and none of which has been ruled upon (or not, if there was no request for relief).

I therefore issue the following directions to the Clerk of Court.

**Ronald Bass Sr.**

The first set of submissions – 14 in number, though there are several duplicates – came from Mr. Ronald Bass, Sr. of North Plainfield, New Jersey.

1

Starting late in 2024, after the original appeal from confirmation of the first Plan of Reorganization was remanded to this court (see Case No. 21 Civ. 7532, Dkt. # 365), either I or Danny Ortiz, who was at various times the Acting Clerk of Court or the Chief Deputy Clerk of Court, began receiving envelopes containing various documents -- either formally filed copies or hand-delivered "courtesy" copies of papers – from Mr. Bass.[1] These submissions are described below. In connection with each I have indicated where it can be found on the docket – or, if it has not been docketed, where I think it should appear on the docket – and a disposition.

**Item 1**: The first submissions consists of a letter dated November 11, 2024, addressed to Danny Ortiz in his capacity as Acting Clerk of Court, asking for "guidance and advice to the attorneys of record in resolving problems of the Sackler's family or Purdue Pharma L.P. reaching some kind of acceptable settlement," and also asking about a hearing in the Bankruptcy Court that was scheduled for November 18, 2024. There is no indication that this letter was received by the court's Pro Se Office or that it was placed on the court's docket.

The Clerk should docket Mr. Bass' request for information under Case No. 21 Civ. 7532, since the request appears to relate to a hearing that was to be held in the Bankruptcy Court following this court's remand of the entire case to that court. The filing is *nunc pro tunc* to the date of the document – November 11, 2024. This filing qualifies as a request for information, not for relief. Once it is docketed, it can be safely ignored, since there is nothing more for the court to do – the hearing it references was held over a year ago.

---

[1] It is hard to figure out exactly what was filed with whom and when. Some items were delivered to the Clerk's Office and some were delivered directly to chambers – without, apparently, any concomitant filing of documents with the Clerk's Office. At least one submission appears to have been lost for several months after it arrived somewhere in the courthouse. Several of Mr. Bass' letters or letter "motions" are dated on dates after a court date stamp indicates that they were received, either by the Clerk's Office or the Pro Se Office. I have done the best I can to sort this out.

**Item 2:**    The second Bass submission is dated December 9, 2024. It seeks "equitable relief as a tag-along claim to the State of Maryland" (addressed to Danny Ortiz, Acting Clerk of Court).[2] Although purportedly filed in December 2024, this document was received by the court's Pro Se Office, but not until March 14, 2025, when it was date stamped. I have no idea where or when it was originally delivered to the courthouse. It was never placed on the docket of any Purdue-related case pending in this court; specifically it does not appear on the docket in 24 Civ. 7042, which is the case number of an appeal filed by the State of Maryland in September 2024.

Mr. Bass suggested that this filing relates to Maryland's appeal as a "tag along.". The relief sought by Mr. Bass does not, however, relate to the appeal filed by the State of Maryland (and others) under that docket number. The appellants in 24 Civ. 7042 were seeking to overturn an order extending the stay/litigation injunction that barred anyone from filing lawsuits against the Sacklers. Mr. Bass' "tag along" filing does not appear to be a notice of appeal from Judge Lane's extension order. Rather, it seeks affirmative, substantive relief against the Sacklers – it is the equivalent of filing a lawsuit against them.  In any event, by December 9, 2024 – and certainly by March 14, 2025, when these papers were officially marked as received by the court --  Maryland's appeal had been decided and the case was either on its way to or pending in the Second Circuit. There was thus no live matter in this court with which Mr. Bass could technically have "tagged along."

Because Mr. Bass indicates that he considered this a "tag along" to the pending matter involving the State of Maryland, and because I need to docket these papers somewhere, I

---

[2] Mr. Ortiz ceased to be the Acting Clerk of Court when Tammi Hellwig was confirmed by the Board of Judges as the Clerk of Court; this occurred on December 4, 2024.

3

conclude that they should be docketed in 24 Civ. 7042. The filing is *nunc pro tunc* to the date that appears on the document – December 9, 2024 – because I cannot explain how it did not arrive in the Pro Se Clerk's Office until three months later.

For reasons to be discussed below, Mr. Bass' request for equitable relief against Purdue and the Sacklers is DENIED.

**Item 3:**  This is a second filing dated December 9, 2024, in which Mr. Bass "respectfully moves this [Honorable] Court to enforce the order and decision upheld by the Supreme Court of the United States in the above referenced case." This "informal letter motion" was addressed to me and was placed on the docket of the Maryland appeal at the time of filing (Dkt. # 67 in Case No. 24 Civ. 7042). It, too, cannot be interpreted as a notice of appeal from Judge Lane's extension order; it is a free-standing application for relief. Interpreted most generously (as I must do with pro se filings) it is not a motion but some sort of complaint against Debtors and the Sacklers.

Mr. Bass' request for relief must be DENIED, for reasons discussed below.

**Item 4:**  There are two letters dated December 23, 2024, which I have aggregated as Item 4. One of them is addressed to Mr. Ortiz; it objects to Debtor's motion for mediation, which had been filed before Judge Lane in the Bankruptcy Court (docketed as Dkt. # 366 in Case No. 21 Civ. 7532). This letter was obviously transmitted to the wrong court, since the motion for mediation was pending before and decided by Judge Lane, who was superintending the bankruptcy. It appears on the docket; there is nothing for this court to do in connection therewith.

The second letter was addressed to me; it objected to any release of claims against the members of the Sackler family by the bankruptcy court. This filing was received by the Pro Se Office on December 23, 2024, and was docketed by the Clerk of Court as Dkt. # 367 in Case No.

4

21 Civ. 7532. It, too, was filed in the wrong court, since I am not in the business of deciding objections to non-existent orders. There was at that time no appeal pending from any order of the Bankruptcy Court that released any claims against the Sacklers.

Mr. Bass' request for relief from this court is DENIED, for reasons to be discussed below.

**Item 5**:  Item 5 is a letter filed on March 14, 2025, addressed to Mr. Ortiz, again seeking "equitable relief and as Tag-Along to the State of Maryland," together with papers and a CD Rom apparently relating thereto. Again, the Court received a hand delivered "courtesy copy," under cover of a letter dated March 31, 2025. The original was docketed as Dkt. # 70 in Case No. 24 Civ. 7042 on March 14, 2025.  As that case was filed by the State of Maryland, it appears that the filing was docketed in the correct case, although the relief sought did not track the relief sought by the State of Maryland (see *supra* and *infra.*), and the case was not active in this court on March 14, 2025 (an appeal was pending in the Second Circuit). Again, Mr. Bass was not appealing from any of Judge Lane's extension orders; generously interpreted, this too represents an attempt to start a new lawsuit against Purdue and the Sacklers.

For reasons discussed below, Mr. Bass' request for affirmative relief as against Purdue and the Sacklers must be DENIED.

**Item 6:**  This consists of a Notice of Motion to Enter a Declaratory Order pursuant to 11 U.S.C. § 1123(b)(6). This appears on the docket of Case No. 21 Civ. 7532 at Dkt. # 370. Generously interpreted, this qualifies as an attempt to start a new lawsuit against Purdue and the Sacklers. It was filed in a case in which there was, and could have been, no activity.

For reasons discussed below Mr. Bass' request for affirmative relied against Purdue and the Sacklers must be DENIED.

**Item 7:**   Item 7 is a letter dated May 21, 2025, addressed to Mr. Ortiz, with an attachment consisting of a "notice of motion" for entry of a "declaratory order" relating to Mr. Bass' claim for opioid related damages. This appears on the docket of Case No. 21 Civ. 7532 as Dkt. # 371. Generously interpreted, it is yet another attempt to start a lawsuit against Purdue and the Sacklers.

For the reasons discussed below, Mr. Bass' request for affirmative relief against Purdue and the Sacklers must be DENIED.

**Item 8:**   This letter, dated June 1, 2025 and addressed to Mr. Ortiz, asks that a certain individual's name be redacted in the papers filed in Item (6) above. This appears on the docket of Case No. 21 Civ. 7532 as Dkt. # 373.

The request for redaction is GRANTED. The Clerk is directed to redact the name of the identified individual from the papers filed at Dkt. # 373 in Case No. 21 Civ. 7532.

**Item 9:**   In this filing, dated June 9, 2025, I was notified that Mr. Bass had sent a letter to Judge Lane of the Bankruptcy Court, in which he announced that he would not vote in favor of the most recent restructuring and settlement of the long-running Purdue Pharma case. This purely informational letter was docketed in Case No. 21 Civ. 7532 as Dkt. # 374.

As Mr. Bass seeks no relief from this court, I note its presence on the docket and move on.

**Item 10:**   This is a second letter to Mr. Ortiz from Mr. Bass, to the same effect as the letter found at Docket # 374. This was docketed as Dkt. # 375 in Case No. 21 Civ. 7532.

See Item 9, supra.

**Item 11:**   Item 11 consists of two copies of the same letter, addressed to me, dated June 20, 2025, asking that Mr. Bass be granted further relief as against the Sackler Family, Purdue

Pharma, and the State of New Jersey. This letter appears twice on the docket of Case No. 21 Civ. 7532, as Dkt. ## 376 and 377. Like many of the previous submissions, it represents an effort to commence proceedings against the Sacklers and Purdue – and, in this case, against Mr. Bass' home state as well.

For the reasons to be discussed below, Mr. Bass' request for relief against Purdue and the Sacklers and the State of New Jersey is DENIED.

**Item 12**: The last submission contained a "motion" for permission for Mr. Bass to participate in electronic case filing. This administrative letter appears on the docket of Case No. 21 Civ. 7532 as Dkt. # 378.

As Case No. 21 Civ. 7532 will be closed upon entry of this order, Mr. Bass' request is DENIED AS MOOT.

The irregular mode of delivery of these papers – some of which came directly to chambers, which accepts "courtesy copies," some of which were addressed to Mr. Ortiz, and only a few filed with the Pro Se Office – has occasioned considerable administrative confusion, both here in my chambers and in the Office of the Clerk of Court. This is especially true because, for much of this 2025, no substantive Purdue-related matter was pending before me (or, for that matter, before any other judge of the United States District Corut for the Southern District of New York). Nonetheless, the undocketed filings among the above need to be formally recorded and all requests for relief ruled upon. I have now done so. The reason for denying Mr. Bass' various requests for affirmative relief is discussed below.

### Maria Ecke

The court has also received papers from one Maria Ecke, apparently acting on behalf of the Estate of David Jonathon Ecke. There are four such submissions:

**Item 1:** Ms. Ecke filed two documents with this court on January 7, 2025. The first is entitled "Brief for Compensation from the Sacklers and Purdue Pharma LP (Dkt. # 368 in Case No. 21 Civ. 7532).

**Item 2:** The second document filed on January 7, 2025 is a document entitled "Objection to the Releasing of the Sacklers or Purdue Pharma (Dkt. # 369 in Case No. 21 Civ. 7532). This document appears to have been filed in the wrong court; it should have been filed in the Bankruptcy Courts. There was at the time no appeal pending in this court from any order of the Bankruptcy Court granting releases to either the Sacklers or the Purdue Debtors; indeed, there was no such order on January 7, 2025, as the parties were engaged in negotiations.

**Item 3:** On November 22, 2025, Ms. Ecke filed a letter (Dkt. # 386 in Case No. 21 Civ. 7532), the contents of which are confusing, since it appears to contain material pertinent to the unrelated bankruptcy of an enterprise called Endo International plc, pending before Bankruptcy Judge Garrity prior to his retirement on September 30, 2024. I do not know how to characterize this submission.

**Item 4:** Finally, on December 10, 2025, Ms. Ecke filed a one page document entitled "motion for full disclosure of redacted financial records." (Dkt. # 387 in Case No. 21 Civ. 7532).

To the extent these documents contain requests for relief from this court against Purdue or the Sacklers, Ms. Ecke's requests are DENIED, for the reasons discussed below.

**The Purdue Appeals and Their Status at Relevant Times**

There were at various times dozens of Purdue cases on the docket on this court. Only three docket numbers are relevant for our purposes here.

8

**The Appeal from the Original Plan of Reorganization**: Case No. 21 Civ. 7532 (CM) was the lead case in the consolidated appeal from the Bankruptcy Court's (Drain, B.J.) order confirming the original Plan of Reorganization in the Purdue Pharma bankruptcy. This is the appeal that ultimately went to the United States Supreme Court, which reversed the Second Circuit's decision that confirmed the Plan, on the ground that the Plan contained non-consensual releases of claims against persons who had never filed in bankruptcy and so were not statutorily entitled to non-consensual releases under the Bankruptcy Code. The Supreme Court's action (which reinstated an order of this court, dated December 16, 2021 (Dkt. # 279), which order had been overturned by the United States Court of Appeals for the Second Circuit) sent the parties back to the drawing board to try to hammer out a new consensual plan for getting Purdue out of bankruptcy. The one caveat was that any new plan could not give the Sacklers non-consensual releases from litigation.

On August 7, 2024, the Second Circuit remanded Case No. 21 Civ. 7532, which had lain in suspense for almost three years while wending its way through the appellate courts, to me. (Dkt. # 364). The Circuit's mandate issued on September 30 (Dkt. # 365). I called for an immediate conference. After meeting with the parties on October 12, 2024, I sent the matter back to the Bankruptcy Court.

At that point, Case No. 21 Civ. 7532 should have been closed, and no further filings should have been accepted under that case number without the permission of the court. The appeal that was the subject of Case No. 21 Civ. 7532 was finally resolved when I sent the case back to the Bankruptcy Court with orders to conduct further proceedings in accordance with the mandate of the United States Supreme Court. There was nothing left to adjudicate under that case number.

However, due to an administrative error (undoubtedly mine, for which I apologize), the Clerk seems not to have been instructed to close the case file on 21 Civ. 7532. As a result, the case has remained technically open on the docket of this court. Both Mr. Bass and Ms. Ecke, who are not attorneys, have filed papers under that number, under the (mistaken) impression that this was proper. I do not fault them.

But this ends today. By this order Case 21 Civ. 7532, and all related cases, will be formally and officially closed.

**Appeals from Litigation Stays/Injunctions**: Two subsequently-filed Purdue-related appeals came before me in the fall of 2024. These appeals were taken from orders by Judge Lane in the Bankruptcy Court that extended the preliminary injunction against all litigation against the Sacklers.[3] These appeals were properly assigned new docket numbers – see 24 Civ. 7042 (appeals filed by the State of Maryland) and 24 Civ. 8604 (an appeal by Nassau County).

These appeals were assigned to me because I was the judge who affirmed Judge Drain's original anti-litigation injunction back in 2019 (Case No. 19 civ. 10941). The orders appealed from related to extensions of that injunction. Mr. Bass, as noted above, managed to file papers under one of these docket numbers.

The State of Maryland filed four separate notices of appeal from four different stay/preliminary injunction extension orders entered by Judge Lane. All four notices of appeal were filed under Case No. 24 Civ. 7042. The first such appeal was taken on September 17, 2024 (Dkt. # 1) and the second on November 20, 2024 (Dkt. # 61). After hearing oral argument on the first of these appeals, this court issued a memorandum decision that affirmed both of the Bankruptcy Courts's first two orders extending the stay/preliminary injunction. That decision

---

[3] Litigation against the Purdue Debtors was stayed by virtue of the automatic stay in bankruptcy. 11 U.S.C. § 362.

was handed down on November 26, 2024 (Dkt. # 63). My decision and order was appealed to the United States Court of Appeals for the Second Circuit, but the appeal was subsequently withdrawn. (Dkt. ## 71, 73).

The Third and Fourth Notices of Appeal were filed from subsequent orders of Judge Lane while the appeal from the order denying the First and Second Notices of Appeal was pending (Dkt. ## 68, 69). These appeals were never perfected .

The appeal in Case No. 24 Civ. 8604 was also not perfected. That appeal was terminated with prejudice by stipulation of the parties on February 19, 2025, (see Dkt. # 10).

Both of these appeals are concluded. The cases should have been terminated and closed by the Clerk of Court, with no further filings allowed except by permission of the court. If these two cases have not already been closed, the Clerk is directed to close them – 24 Civ. 7402 *nunc pro tunc* to July 31, 2025, when the Second Circuit issued a mandate that formally terminated the State of Maryland's appeal to that court (Dkt. # 73) and 24 Civ. 8604 *nunc pro tunc* to February 19, 2025, when the parties stipulated to discontinue the appeal to this court (Dkt. # 10).

In short, all three cases that were originally pending before this court relating to the confirmation of the original Purdue Pharma Plan of Reorganization and subsequent negotiations are over; there is nothing left to be done in any of them. All three of them (and any related cases that are listed on the docket of the court) should be terminated, and the files closed by the Clerk.

**The Confirmation of the New Plan of Reorganization**

It is my understanding that a new Plan of Reorganization – one that does not offer the Sacklers releases from claims asserted by persons who do not consent to their release -- was confirmed by Bankruptcy Judge Sean Lane in an order entered on November 18, 2025. That order was  modified ruling on November 20, 2025.

Multiple appeals have been filed from Judge Lane's order, principally if not exclusively by *pro se* creditors who object to any sort of release, consensual or not, and most particularly any release of members of the Sackler Family. I am advised that both Mr. Bass and Ms. Ecke have filed notices of appeal from Judge Lane's order confirming the new Plan of Reorganization in the Bankruptcy Court.

The first such appeal – which was apparently filed several days before the confirmation order was entered – was wheeled out to my colleague The Hon. Kenneth A. Karas. Judge Karas recused himself. The appeal was then wheeled out to Judge Roman, under Case No. 25 Civ. 9681. All other notices of appeal are apparently pending reassignment to some judge.

Judge Roman has indicated to me that he intends to accept all timely filed appeals, so he will be handling the case from here on out. This is entirely appropriate. The Local Rules for the Division of Business Among District Judges make it clear that closed cases are not related to newly opened cases (See Local Rule for the Division of Business Among District Judges 9), and my Purdue cases are (or should have been) closed cases at the time Judge Lane entered his order confirming the new Plan of Reorganization. The same local rules provide that no single district judge is automatically assigned all appeals from orders in a single bankruptcy (See Local Rule for the Division of Business Among District Judges 4(b)). So while I would have been happy to accept the appeals from Judge Roman, given my familiarity with this case, it was his decision whether or not to keep them. He has made that decision; it is time for me to wave farewell to the Purdue Pharma team, with gratitude for your hard work and the assistance you have repeatedly offered to this court.

## Basis for the Court's Rulings

As is clear from the foregoing, the court is denying Mr. Bass and Ms. Ecke the relief they have requested in some of the submissions described above. They are entitled to an explanation.

Neither Mr. Bass nor Ms. Ecke is an attorney. Nonetheless, they have been active participants in the Bankruptcy Court litigation, and they are adamantly opposed to any settlement with the Sacklers in the context of the bankruptcy. Rather than participate in the settlement contemplated by the newly approved Plan of Reorganization, both of them appear to want to commence lawsuits against the Sacklers and Purdue to obtain damages for injuries sustained by them, or by their decedents, as a result of opioid addiction and the use of Oxycontin. And both of them have asked – Mr. Bass repeatedly so – that this court award them various forms of affirmative relief against members of the Sackler Family and Purdue Pharma. Mr. Bass has asked for the imposition of an "equitable lien" against their assets. He has sought declaratory relief. He even seeks relief against the State of New Jersey, where he lives, which state has signed on to the new Plan of Reorganization. (See Items 2 and 5 at pages 2–3.)

For her part, Ms. Ecke filed with this court what she styled as a "Brief for Compensation Against the Sacklers and Purdue Pharma" – which I construe as the equivalent of a complaint intended to initiate a lawsuit against them – as well as an "Objection to the Releasing of the Sacklers or Purdue Pharma." Her more recent filings, specifically for an order relating to the unsealing of financial records and calling the court's attention to matters comprehended in a different bankruptcy, are, quite frankly, not comprehensible.

Just one response has been filed to any of these requests for relief. (Case No. 24 Civ. 7042, Dkt. # 72). But that single response, limited though it be, points out the fatal flaw in all of these applications. All of these requests for relief were filed in violation of either the automatic

13

stay in bankruptcy (as to the Purdue Debtors) or the injunction against litigation against the Sacklers (as to the Sacklers).

Since the day that Purdue and its affiliated debtors filed their petitions in bankruptcy back in 2019, all litigation (including opioid-related litigation) against Purdue and its affiliated companies, officers and directors was automatically stayed, pursuant to 11 U.S.C. § 362. And in November of 2019, Judge Drain entered a preliminary injunction that barred litigation against members of the Sackler Family, which injunction was affirmed on appeal. *See In re Purdue Pharms. L.P.*, 619 B.R. 38 (S.D.N.Y. 2020). The injunction was then repeatedly extended – sometimes over objection (see the State of Maryland appeals), sometimes with the consent of all parties. Both the automatic stay and the preliminary injunction remain in place today. I am advised that the plan is to dissolve them at some point in early 2026, perhaps in March.

Because of the automatic stay and the anti-litigation injunction, Mr. Bass and Ms. Ecke were barred from filing any lawsuit or affirmatively asserting any sort of claim against Purdue or the Sacklers; they were permitted to file a proof of claim as a creditor in the Bankruptcy Court, but that is all. Similarly, because of the automatic stay and preliminary injunction, this court had no ability or authority to entertain any claims for declaratory relief, equitable liens, or compensation that Mr. Bass or Ms. Ecke sought to assert against either Purdue or the Sacklers. It is for that reason that I must deny Mr. Bass any relief in connection with his filings at Items 2, 3, 4, 5, 6, 7 and 11, or Ms. Ecke any relief in connection with her filings at Items 1-4. There is no reason to discuss any of the other numerous procedural irregularities that render these requests for relief from this court non-justiciable. They are denied.

Mr. Bass also seeks relief against the State of New Jersey. There is no stay or injunction barring litigation against the State of New Jersey, but Mr. Bass has not commenced any lawsuit

in this court against the State of New Jersey, so there is no basis on which this court could even begin to consider any claim that he might assert against it. If he wishes to sue New Jersey (and there may be limitations on his ability to do that, including limitations on where such a lawsuit can be brought), he needs to file a complaint outlining his claims and follow the steps needed to commence a lawsuit. Mr. Bass' free-standing request for relief from New Jersey cannot be entertained by this court.

Ms. Ecke stands in the same posture as Mr. Bass. Her free-standing demand for "compensation from the Sacklers and Purdue" (Dkt. # 368) is really a complaint against those parties. As such, it too was filed in violation of the automatic stay and the anti-litigation injunction, and so could not be considered by this court.

As for her "objection" to any release for the Sacklers or Purdue (Dkt. #369), that is a document – like similar documents filed by Mr. Bass (see Items 4, 9 and 10, *supra.*) -- that needed to be addressed to the Bankruptcy Court. This court was not superintending the bankruptcy or considering objections to discharge. A district judge only has jurisdiction over properly filed appeals from orders entered by the Bankruptcy Court. At the time Ms. Ecke filed this document there was, as far as I know, no order of the Bankruptcy Court granting a discharge to anyone, so her filings cannot be construed as notices of appeal from such an order.

Ms. Ecke's December 10 filing seeking "full disclosure" (Dkt. # 387) also does not relate to any appeal that was pending before me on that date. So her "motion" must be denied as improvidently filed.

Ms. Ecke's other filing (at Dkt. # 386) is, frankly, not comprehensible in the context of this case.

Now that the Plan has been confirmed, the stay in bankruptcy and the preliminary injunction against Sackler-related litigation will soon expire. It is my understanding that the stay and anti-litigation injunction have once again been extended without objection, -- but only through the "effective date" of the Plan, which is expected to be some time in March of 2026. As a result, there will soon be neither any statutory nor any judicial bar to Mr. Bass' or Ms. Ecke's filing whatever lawsuits they might like to file, asserting whatever claims they might like to assert against the Sacklers. Of course, if the Plan goes into effect and is affirmed on appeal by Judge Roman, Mr. Bass and Ms. Ecke will not be able to sue Purdue, the debtor, or members of the Sackler Family in certain capacities, because Purdue and its affiliates will have received discharges in bankruptcy, and all preexisting claims against it – even those of objecting debtors like Mr. Bass and Ms. Ecke – will be extinguished. But there are presently appeals pending from the order confirmation the Plan, including appeals by Mr. Bass and Ms. Ecke. I cannot predict what the outcome of the pending appeals will be; that decision rests with Judge Roman.

I appreciate how confusing this must be for good people like Mr. Bass and Ms. Ecke, who through no fault of their own find themselves caught up in the mess that has been left behind by Purdue and the Sacklers. In particular, I imagine it is difficult for those not familiar with legal process to understand the limited role – and it is extremely limited – that a district judge like myself plays in a complicated bankruptcy like Purdue's. As a general rule, it is the Bankruptcy Judge (Judge Drain, Judge Lane) who makes decisions on all substantive matters relating to the bankruptcy in the first instance. This court is only allowed to get involved when someone takes an appeal from orders of the Bankruptcy Court, or when someone makes a motion to "withdraw the reference" to the Bankruptcy Court in connection with a particular

16

matter that was pending in some court prior to the filing in bankruptcy.[4]  We district judges do not have the power to entertain requests that we enter relief against a debtor or other person who is protected from immediate litigation by a stay of proceedings – requests like those made by Mr. Bass or Ms. Ecke.

I am also limited in how much advice I can provide to individuals like Mr. Bass and Ms. Ecke as they pursue their claims against the Sacklers. I would imagine that counsel for the Unsecured Creditors Committee (the Akin Gump firm) can provide them with more detailed information about how this works.

## Directions to the Clerk of Court

This order is intended to dispose of all matters that are presently open before me in connection with the Purdue bankruptcy.

The Clerk shall docket and close out all motions or applications for relief that were filed by either Ronald Bass or Maria Ecke in the following manner:

*Docketing and Disposition:*

Item 1, a submission dated November 11, 2024, should be docketed under Case Number 21 Civ. 7532. Any request for relief should be DENIED AS MOOT.[5]

---

[4] As far as I know, neither Mr. Bass nor Ms. Ecke had any lawsuit pending against the Debtors or the Sacklers prior to the filing in bankruptcy as to which the reference could have been withdrawn. If they did, they will soon be free to pursue those lawsuits – assuming, of course, that they decide not to participate in the settlement that is part of the Plan.

[5] The court will provide the Clerk with the copy of this document that was received in chambers.

Item 2, a submission dated December 9, 2024, described on page 3 above, should be docketed in 24 Civ. 7042 and immediately DENIED as a violation of the automatic stay/anti-litigation injunction.[6]

*Disposition:*

The following items on the docket of 21 Civ. 7532 should be DENIED as against the Purdue Debtors and the Sackler Family members as violations of the automatic stay/anti-injunction litigation: Docket ## 367, 368, 369, 370, 371, 376, 377 and 387.

The following items on the docket of 21 Civ. 7532 should be DENIED insofar as they seek relief against the State of New Jersey, against which no lawsuit is pending in this court: Docket ## 376 and 377.

The following item on the docket of 21 Civ. 7532 should be DENIED AS MOOT: Docket # 378.

The following item on the docket of 21 Civ. 7532 should be GRANTED, and the Clerk should make the appropriate redaction: Docket #373.

The following item on the docket of 24 Civ. 7042 should be DENIED as a violation of the automatic stay/anti-injunction litigation: Docket ## 67, 70.

*Case Closings:*

Once all of that is done, the Clerk should ensure that the following cases are terminated and closed:

21 Civ. 7532 (CM) and all related cases

24 Civ. 7042 (CM) and all related cases

24 Civ. 8604 (CM) and all related cases.

---

[6] The court will provide the Clerk with the "courtesy copy" of this document that was received in chambers.

18

The Clerk of Court is directed to accept no filings in any of these cases or their related cases unless and until a party moves to reopen the case and that motion is granted by the court. Obviously, if a motion to reopen is made, it should be accepted for filing.

Finally, the Clerk of Court is directed to remove from the Court's list of open motions any motion or application for relief that appears on under any of the above listed case numbers or in any case related thereto, by whomever made.

This constitutes the decision and order of the Court. It is a written decision.

Dated: December 18, 2025

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

BY FIRST CLASS MAIL TO

        Ronald Bass, Sr.
        Maria Ecke